(February 12, 1926.)

MORRIE SMALLWOOD, Appellant, v. F. A. JETER, as Commissioner of Law Enforcement of the State of Idaho, Respondent.

[244 Pac. 149.]

ACT TO REGULATE AUTO TRANSPORTATION COMPANIES—TITLE TO ACT—CONSTITUTIONAL LAW—STATUTORY CONSTRUCTION—VERBAL CHANGE IN STATUTE TO CARRY OUT LEGISLATIVE INTENT—LICENSE TAX—AUTO TRANSPORTATION COMPANIES AS COMMON CARRIERS—REGULATIONS UNDER POLICE POWER—AMOUNT OF BOND—QUALIFICATIONS OF BONDSMEN — REASONABLENESS OF LICENSE FEE AND BOND — REASONABLENESS OF CLASSIFICATION—REASONABLENESS OF EXEMPTIONS—LICENSE TAX NOT A "TOLL" NOR DUPLICATE TAXATION.

1. For a statute to be declared unconstitutional, it must clearly appear so; any doubt being resolved in its favor, and a construction sustaining its validity will be adopted, if fairly permissible.

2. Sess. Laws 1925, chap. 197, does not contravene Const., art. 3, sec. 16, as it contains but one subject with matters properly connected therewith, and the subject is expressed in the part of the title, "To regulate auto transportation companies."

3. Sess. Laws 1925, chap. 197, is intended to regulate auto transportation companies which engage in business as such, as shown by sections 3, 5, with regard to procuring liability and damage insurance, and filing monthly reports and paying fee of percentage of earnings.

4. Power of the legislature to impose a license tax is on those only who are doing business.

5. In construing a statute, the court may change words thereof to give effect to the manifest intention of the legislature as gathered from the whole, when a literal reading will work an unreasonable or absurd result, especially when necessary to prevent the act becoming a nullity.

6. The title and body of Sess. Laws 1925, chap. 197, includes "all auto transportation companies," and section 3, requires "every" such company before engaging in such business to procure insurance or bond. The further provision as to the amount of insurance and bond, when read literally, exempts vehicles equipped to transport less than twelve passengers, and makes a class by itself of vehicles equipped to carry exactly twenty passengers; the word "less" will therefore be read as "more," in order to obtain the

sensible graduated classification apparently intended by the legislature.

7. Under Sess. Laws 1925, chap. 197, sec. 3, liability of insurance or bond of auto transportation company for injury to a single passenger is limited to $5,000, regardless of capacity of vehicle.

8. An auto transportation company engaging exclusively in transportation of property may, under Sess. Laws 1925, chap. 197, secs. 3, 4, have permit therefor on giving of $1,000 bond for each car for injury to property; insurance or bond for personal injury being only for injury to passengers.

9. Requirement of Sess. Laws 1925, chap. 197, sec. 3, that auto transportation company give insurance or bond "providing for compensation" can refer only to "any recovery for personal injury" of passenger or "for damage to property," and does not enlarge the company's liability beyond what it would be without the statute.

10. Under presumption that legislature intended to keep within its power, Sess. Laws 1925, chap. 197, providing for auto transportation companies furnishing insurance or bond to satisfy recovery for injury to passenger or damage to property, must be construed as applicable to common carriers only.

11. State cannot by legislative fiat convert property used exclusively in business of private carrier into a public utility, or make the owner a public carrier.

12. The requirement of Sess. Laws 1925, chap. 197, sec. 3, that auto transportation companies furnish insurance or bond to satisfy recovery for injury to passenger or damage to property, is a regulation under the police power which can only be imposed on a public carrier, as distinguished from a private carrier.

13. As that part of Sess. Laws 1925, chap. 197, sec. 3, requiring of auto transportation companies bond to satisfy recovery for injury to passenger or for damage to property, is a regulation that can rightfully be imposed only on public carriers, as distinguished from private carriers, the further imposition, by section 5, of a license tax on the business of such companies, will be considered a part of such regulation, and so imposed on the same class of carriers only.

14. Power to require, as does Sess. Laws 1925, chap. 197, sec. 3, that auto transportation companies, which are common carriers, give bond to satisfy recovery for injury to passenger or damage to property, implies power to establish the qualification of the bondsman as an insurance or bonding company.

15. As the requiring of a bond from auto transportation companies is a matter of legislative discretion, so is the amount

of the bond, unless it be wholly unreasonable, or confiscatory and prohibitive of a business which may not be prohibited.

16. The cost of bonds required by Sess. Laws 1925, chap. 197, sec. 3, of an auto transportation company, does not invalidate it as unreasonable; the limit of liability for each car being $5,000 for injury to one person, and a $10,000 maximum liability for injury to all in a vehicle of not over twelve passengers' capacity.

17. License fee of five per cent of gross earnings of auto transportation company imposed by Sess. Laws 1925, chap. 197, sec. 5, is not invalid merely because above cost of regulation.

18. Allegation of complaint, that license fee required of auto transportation company is in excess of value of privilege conferred, is mere conclusion of law, not admitted by demurrer.

19. Even if the business of an auto transportation company will not pay the license tax of five per cent of gross earnings required by Sess. Laws 1925, chap. 197, sec. 5, and leave a margin of profit, this does not require foregoing of the tax.

20. Use of highways, which as to private carriers may be regulated, may as to public carriers be prohibited.

21. Classification of auto transportation companies by Sess. Laws 1925, chap. 197, to subject to regulation only those using the public highways for transportation of passengers or freight for hire as a business, and not those using highways for transportation of their own goods in their own privately-owned vehicles, is not unreasonable.

22. The exemption by Sess. Laws 1925, chap. 197, as to bonds and license tax of auto transportation companies, of vehicles used exclusively for transportation of school children is not unreasonable.

23. Exemption from Sess. Laws 1925, chap. 197, as to bonds and license tax of auto transportation companies of motor propelled cars or engines operated on tracks of steam or electric railroads, and companies operating exclusively in cities, is not arbitrarily discriminative or unreasonable; the former being under jurisdiction of Public Utilities Commission (C. S., secs. 2368–2530), and the latter being left in the control of the cities, and the classes being further so inherently subject to distinction as to permit the classification.

24. Relative to claim of discrimination, in favor of carrying of baggage, of Sess. Laws 1925, chap. 197, sec. 5, imposing on auto transportation companies a license tax of five per cent of gross earnings from freight and passengers carried, carrying of baggage is ordinarily incident to carrying of passengers.

25. That express companies are already subject to a business tax under C. S., sec. 3355, justifies, as against claim of discrimina-

tion, the imposition by Sess. Laws 1925, chap. 197, sec. 5, on auto transportation companies of the license tax of five per cent of gross earnings from "freight and passengers" carried, only.

26. That the regulations imposed by Sess. Laws 1925, chap. 197, on auto transportation companies, might burden the carrying of mails, and the necessity of unburdened transportation thereof, are sufficient justification · of exemption of mail carried from the license tax, imposed on such companies, of five per cent of gross earnings from "freight and passengers" transported.

27. The five per cent tax on earnings from carrying passengers and freight, imposed by Sess. Laws 1925, chap. 197, sec. 5, on auto transportation companies, is not a "toll" forbidden on federal aid roads by Act Cong. July 11, 1916 (U. S. Comp. Stats., sec. 7477a et seq.); and Act Cong. Nov. 9, 1921 (U. S. Comp. Stats. Ann. Supp. 1923, secs. 7477¼–7477¼y), but is a license tax on the privilege of using the highways for business purposes.

28. The five per cent tax on earnings imposed by Sess. Laws 1925, chap. 197, sec. 5, being a license tax, does not violate Const., art 7, sec. 5, requiring uniformity, and prohibiting duplication of taxes.

29. The court cannot pass on the manner or form in which plaintiff has right to comply with a statute, he not offering or attempting to comply with it under any terms, but refusing to do so altogether, and seeking to enjoin its enforcement.

Publisher's Note.
1.  See 6 R. C. L. 75.
5.  See 25 R. C. L. 973.
20.  See 13 R. C. L. 251.

See Actions, 1 C. J., sec. 68, p. 973, n. 11.
Business, 9 C. J., p. 1103, n. 38; p. 1106, n. 84 New.
Carriers, 10 C. J., sec. 1, p. 37, n. 2; sec. 2, p. 38, n. 13, 14; sec. 9, p. 40, n. 37, 37 New; sec. 1567, p. 1196, n. 73.
Constitutional Law, 12 C. J., sec. 220, p. 787, n. 96; p. 788, n. 1; p. 790, n. 6 New; sec. 390, p. 891, n. 78; sec. 392, p. 892, n. 87, 88.
Engage, 20 C. J., p. 1257, n. 63, 64, 65, 68.
Highways, 29 C. J., sec. 409, p. 646, n. 40.
Licenses, 37 C. J., sec. 13, p. 175, n. 97; sec. 70, p. 216, n. 99.
Motor Vehicles, 28 Cyc., p. 35, n. 7 New.
Pleading, 31 Cyc., p. 63, n. 10; p. 335, n. 80.
Statutes, 36 Cyc., p. 1023, n. 5; p. 1049, n. 18; p. 1107, n. 36; p. 1116, n. 5; p. 1127, n. 46; p. 1128, n. 54.
Taxation, 37 Cyc., p. 733, n. 95; p. 757, n. 39.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Dana E. Brinck, Judge.

Action to enjoin enforcement of Sess. Laws 1925, c. 197, regulating auto transportation companies. From judgment on general demurrer, plaintiff appeals. *Affirmed.*

Dean Driscoll, A. F. James and Geo. W. Padgham, for Appellant.

The act is a police measure in part, but also a revenue measure, in that the fee exceeds the cost of regulation. (*State v. Nelson,* 36 Ida. 713, 213 Pac. 358.)

The insurance provisions are unconstitutional because unreasonable: (a) in amount (*People v. Kastings,* 307 Ill. 92, 138 N. E. 269); (b) on account of the limitation to surety companies. (*George Bolln Co. v. North Platte Valley Irr. Co.,* 19 Wyo. 542, 121 Pac. 22, 39 L. R. A., N. S., 868; *State v. Robbins,* 71 Ohio St. 273, 2 Ann. Cas. 485, 73 N. E. 470, 69 L. R. A. 427; *Jitney Bus Assn. v. Wilkesbarre,* 256 Pa. 462, 100 Atl. 954.)

The tax or fee provisions are unconstitutional because even more unreasonable, being prohibitive of the business. (*Fiscal Court v. Cox Co.,* 132 Ky. 738, 117 S. W. 296, 21 L. R. A., N. S., 83; *Ohio Tax Cases,* 232 U. S. 576, 34 Sup. Ct. 372, 58 L. ed. 737; 26 R. C. L., sec. 211, p. 238; *Southern Gum Co. v. Laylin,* 66 Ohio, 578, 64 N. E. 564; *State v. Osborne,* 171 Iowa, 678, Ann. Cas. 1917E, 497, 154 N. W. 294; *City of Portland v. Portland Ry., L. & P. Co.,* 80 Or. 271, 156 Pac. 1058.)

Neither can this be met by saying the legislature has a right to prohibit the use of the roads, for it has not. (*State v. Gish,* 168 Iowa, 70, Ann. Cas. 1917B, 135, 150 N. W. 37.)

While the legislature may make classifications in exercising the police power, they must be based on substantial differences and the law must apply equally to all members of the same class. (*Atchison, Topeka & Santa Fe v. Matthews,* 174 U. S. 96, 19 Sup. Ct. 609, 43 L. ed. 909; *Ohio v. Dollison,* 194 U. S. 445, 24 Sup. Ct. 703, 48 L. ed.

1062; *State v. Crosson,* 33 Ida. 140, 190 Pac. 922; *Crom v. Frahm,* 33 Ida. 314, 193 Pac. 1013; *In re Mallon,* 16 Ida. 737, 102 Pac. 374, 22 L. R. A., N. S., 1123; *Jones v. Power Co.,* 27 Ida. 656, 150 Pac. 35; *State v. Horn,* 27 Ida. 782, 152 Pac. 275.)

The same is true as to the power of taxation. (*State v. Crosson, supra; Ex parte Kotta,* 187 Cal. 27, 200 Pac. 957; *Royster Guano Co. v. Virginia,* 253 U. S. 412, 40 Sup. Ct. 560, 64 L. ed. 989.)

The fee is double taxation in violation of Const., art. 7, sec. 5, as a license fee was already paid for the same purpose. (*City of Newport v. Fitzer,* 131 Ky. 544, 115 S. W. 742, 21 L. R. A., N. S., 279; *Chicago v. Collins,* 175 Ill. 445, 67 Am. St. 224, 51 N. E. 907, 49 L. R. A. 408; *Brown v. Shupe,* 40 Ida. 252, 233 Pac. 59.)

This act violates the acts of November 9, 1921 (1921 Supp. Fed. Stats. Ann. 95), and of July 11, 1916 (1918 Supp. Fed. Stats. Ann. 639), forbidding tolls on federal aid roads. (*Buck v. Guykendall,* 267 U. S. 307, 623, 45 Sup. Ct. 324, 69 L. ed. 623.)

The insurance feature of the act is void because unintelligible. (Const., art. 3, sec. 17; *Knight v. Trigg,* 16 Ida. 256, 100 Pac. 1060.)

The act cannot be corrected by the addition or omission of words. (*School District Cases,* 34 Ida. 222, 200 Pac. 138; *Highway Trailer Co. v. Janesville Electric Co.,* 187 Wis. 161, 204 N. W. 773.)

This act provides: (1) for insurance and registration, (2) also for the raising of revenue, and (3) makes an appropriation in violation of sec. 16, art. 3, of the constitution, providing that every act shall embrace but one subject. (*Hailey v. State Historical Soc.,* 25 Ida. 165, 136 Pac. 212; *State v. Banks,* 37 Ida. 27, 215 Pac. 468.)

A. H. Conner, Attorney General, and Bartlett Sinclair, Assistant Attorney General, for Respondent.

The unconstitutionality of an act of the legislature must clearly appear, and if there is reasonable doubt as to its constitutionality, the doubt should be resolved in favor of

the act. (*Ingard v. Barker*, 27 Ida. 124, 147 Pac. 293; *State v. Omaechevviaria*, 27 Ida. 797, 152 Pac. 280; *Hindman v. Oregon Short Line R. R. Co.*, 32 Ida. 133, 178 Pac. 837; *In re Kessler*, 26 Ida. 764, Ann. Cas. 1917A, 228, 146 Pac. 113, L. R. A. 1915D, 322.)

The constitution only requires the subject of the act to be expressed in the title. It is not necessary that the title should include ''the matters properly connected'' with the subject, and if it reasonably notifies the legislators and the people of the legislative intent, it is sufficient. (Const., sec. 16, art. 3; *Kessler v. Fritchman*, 21 Ida. 30, 119 Pac. 692; *State v. Pioneer Nurseries Co.*, 26 Ida. 332, 143 Pac. 405; *Barton v. Alexander*, 27 Ida. 286, Ann. Cas. 1917D, 729, 148 Pac. 471; *In re Crane*, 27 Ida. 671, 151 Pac. 1006, L. R. A. 1918A, 942.)

When the context clearly expresses the intent, the language may be reformed to meet it. The letter must yield to the spirit of the act. (25 R. C. L., sec. 225, p. 975, notes 19 and 20; *State v. Bowman*, 40 Ida. 470, 235 Pac. 577; *Carlson v. Mullen*, 29 Ida. 795, 162 Pac. 332; *Speer v. Stephenson*, 16 Ida. 707, 102 Pac. 365; 2 Sutherland on Stat. Construction, secs. 382, 383, 410; *State v. Hall*, 120 Wash. 449, 207 Pac. 685; 36 Cyc. 1109; *Barth v. Pock*, 51 Mont. 418, 155 Pac. 282; *Meier v. Superior Court*, 67 Cal. App. 135, 227 Pac. 490; *Oklahoma Natural Gas Co. v. Corporation Com.*, 90 Okl. 84, 216 Pac. 917.)

The tax levied by sec. 5 of the act is not a ''toll,'' as that word is used in the Federal Highway Act of 1921, and the acts preceding it. A ''tax'' is levied by a sovereign; a ''toll'' is levied by a proprietor. (*Case of State Freight Tax*, 15 Wall. (U. S.) 232, 21 L. ed. 146; *Cardwell v. American River Bridge Co.*, 113 U. S. 205, 5 Sup. Ct. 423, 28 L. ed. 959; *Sands v. Manistee River Imp. Co.*, 123 U. S. 288, 8 Sup. Ct. 113, 31 L. ed. 149; *City of St. Louis v. Western Union Tel. Co.*, 148 U. S. 92, 13 Sup. Ct. 485, 37 L. ed. 380; *State v. Vigneaux*, 130 La. 424, 58 So. 135.)

The tax here imposed is not a tax on property or by valuation, but is a license or registration tax in the nature

of an excise, and, therefore, does not come within Const., sec. 5, art. 7, requiring uniformity and prohibiting duplication of taxes. (*In re Kessler,* 26 Ida. 764, Ann. Cas. 1917A, 228, 146 Pac. 113, L. R. A. 1915D, 322; 2 Cooley on Taxation, 4th ed., sec. 956, p. 1914; *State v. Jones,* 9 Ida. 693, 75 Pac. 819; *State v. Nelson,* 36 Ida. 713, 213 Pac. 358; *Ohio Tax Cases,* 232 U. S. 576, 34 Sup. Ct. 372, 58 L. ed. 737; Berry on Automobiles, 4th ed., secs. 110–112; *Jasnowski v. City of Detroit,* 191 Mich. 287, 157 N. W. 891.)

The state has the power to regulate the operation of motor vehicles upon the highways, and in doing this, exercises its police power, which is essential to the preservation, safety, health and good order of its citizens. (*Mich. Public Utilities Com. v. Duke,* 266 U. S. 570, 45 Sup. Ct. 191, 36 A. L. R. 1105, 69 L. ed. 445; *Hendrick v. Maryland,* 235 U. S. 610, 35 Sup. Ct. 140, 59 L. ed. 385; *Kane v. New Jersey,* 242 U. S. 160, 37 Sup. Ct. 30, 61 L. ed. 222; *Packard v. Banton,* 264 U. S. 140, 44 Sup. Ct. 257, 68 L. ed. 596; *Lane v. Whittaker,* 275 Fed. 476; *In re Kessler, supra; State v. Seattle Taxicab etc. Co.,* 90 Wash. 416, 156 Pac. 837; *City of Memphis v. State,* 133 Tenn. 83, Ann. Cas. 1917C, 1056, 179 S. W. 631, L. R. A. 1916B, 1151; *Buck v. Kuykendall,* 267 U. S. 307, 45 Sup. Ct. 324, 69 L. ed. 623; *Frost v. Railroad Com.* (Cal.), 240 Pac. 26.)

Payment of a motor vehicle license tax exempts that vehicle from a tax by valuation. (C. S., par. 21, sec. 3099, as amended by chap. 106, Laws of 1921; C. S., sec. 1602; *Achenbach v. Kincaid,* 25 Ida. 768, 140 Pac. 529.)

The amount of insurance or bond fixed by section 3 is not unreasonable in amount. (Berry on Automobiles, 4th ed., p. 1453; *Ex parte Cardinal,* 170 Cal. 519, 150 Pac. 348, L. R. A. 1915F, 850; *Lutz v. City of New Orleans,* 235 Fed. 978; *Ex parte Parr,* 82 Tex. Cr. 525, 200 S. W. 404; *Packard v. Banton,* 264 U. S. 140, 44 Sup. Ct. 257, 68 L. ed. 596.)

The requirement that the bonds required by section 4 may be written only by authorized surety companies is not an unreasonable exercise of the police power. (*State*

*v. Seattle Taxicab etc. Co.,* 90 Wash. 416, 156 Pac. 837; *Lutz v. City of New Orleans, supra; Ex parte Cardinal* (Cal.), 150 Pac. 348.)

A five per cent tax on gross earnings is not unreasonable in itself. The fact that the tax is in excess of the actual cost of regulation, and that the expense is more than the plaintiff thinks he can temporarily stand does not affect its validity or its reasonableness. (*Kane v. New Jersey,* 242 U. S. 160, 37 Sup. Ct. 30, 61 L. ed. 222; Berry on Automobiles, 4th ed., sec. 113; *West v. City of Asbury Park,* 89 N. J. L. 402, 99 Atl. 190; *In re Kessler, supra; People v. Martin,* 203 App. Div. 423, 197 N. Y. Supp. 28.)

The fact that the requirements may prevent some from operating is not material. This is characteristic of all regulations. (*State v. Seattle Taxicab etc. Co., supra; In re Kessler, supra;* Cooley on Taxation, 3d ed., p. 390; *Ohio Tax Cases,* 232 U. S. 576, 34 Sup. Ct. 372, 58 L. ed. 737.)

Even though plaintiff may have contracted to haul persons or property for fixed rates, such contracts are always entered into with full knowledge that the state has the right to tax. (*City of Portland v. Portland Ry. L. & P. Co.,* 80 Or. 271, 156 Pac. 1058; 12 C. J. 993.)

The class to which the act applies and the exemptions made therein are reasonable, and the distinctions made between the classes are such as naturally inhere in the subject matter. (*Jasnowski v. City of Detroit,* 191 Mich. 287, 157 N. W. 891; *State v. Horn,* 27 Ida. 782, 152 Pac. 275; *Royster Guano Co. v. Virginia,* 253 U. S. 412, 40 Sup. Ct. 560, 64 L. ed. 989; *Billings v. Illinois,* 188 U. S. 97, 23 Sup. Ct. 272, 47 L. ed. 400; *Nolen v. Riechman,* 225 Fed. 812; *Radice v. New York,* 264 U. S. 292, 44 Sup. Ct. 325, 68 L. ed. 690.)

Exemption of persons operating motor vehicles for their own use as distinguished from persons operating them for compensation is a reasonable one. (*Packard v. Banton,* 264 U. S. 140, 44 Sup. Ct. 257, 68 L. ed. 596; *People v. Kastings,* 307 Ill. 92, 138 N. E. 269; *City of Memphis v. State,* 133 Tenn. 83, 179 S. W. 631.)

The exemption of motor vehicles used exclusively for the transportation of children to and from schools is a reasonable classification on account of the public interest in the question of education. (*Graves v. Janes,* 18 Ohio C. C. 488, 52 L. R. A., N. S., note, p. 950.)

Exemption of motor propelled cars or engines operated on the tracks of steam or electric railroads is not arbitrary or unreasonable. (*West v. City of Asbury Park,* 89 N. J. L. 402, 99 Atl. 190; *Nolen v. Riechman, supra; Huston v. Des Moines,* 176 Iowa, 455, 156 N. W. 883; *Willis v. City of Fort Smith,* 121 Ark. 606, 182 S. W. 275.)

The classification made in section 3 whereby the amount of the bond or insurance is based upon the seating capacity of the vehicles is a proper one, and is not arbitrary or unreasonable. (Berry on Automobiles, 4th ed., sec. 1638, p. 1407; *Jefferson Highway Trans. Co. v. St. Cloud,* 155 Minn. 463, 193 N. W. 960.)

The bond or insurance is for the benefit of the public, and not the auto transportation company. (*Boyle v. Manufactures Liability Ins. Co.,* 96 N. J. L. 380, 22 A. L. R. 231, note 2, 115 Atl. 383; *Gillard v. Manufactures Casualty Ins. Co.,* 92 N. J. L. 146, 104 Atl. 707, 93 N. J. L. 215, 107 Atl. 446.)

TAYLOR, J.—This appeal is from a judgment of the district court of Ada county, rendered upon sustaining a general demurrer to plaintiff's complaint in an action brought against the commissioner of law enforcement to enjoin the enforcement of Sess. Laws 1925, c. 197.

Section 1 of the act provides:

"The term 'auto transportation company' as used in this Act means every person, copartnership, corporation or association, its or their heirs and legal representatives or assigns, owning, controlling, operating or managing any motor propelled vehicle for the transportation of persons and/or property for compensation over any public highway in this State: *Provided, however,* That it shall not include school busses, or other motor vehicles, used exclusively for

the transportation of children to and from school, nor motor propelled cars or engines operated on the tracks of steam or electric railroads, nor companies operating exclusively within the corporate limits of incorporated cities."

Section 3 provides:

"Every auto transportation company, within the meaning of this Act, shall, before engaging in such business, procure liability and property damage insurance from an insurer licensed to furnish such insurance in the State of Idaho, or a surety bond of a surety company authorized to write surety bonds in said State, on each motor propelled vehicle used in transporting persons and/or property, providing for compensation in the amount of not to exceed $5,000 for any recovery for personal injury suffered by one person, not less than $10,000 for recovery for personal injury suffered by all persons injured while being transported in each such vehicle equipped to carry not less than twelve passengers, not less than $15,000 for personal injury suffered by all persons injured while being transported in each such vehicle equipped to carry not less than twenty passengers, and not less than $20,000 for recovery for personal injury suffered by all persons injured while being transported in each such vehicle equipped to carry more than twenty passengers; and also in an amount not to exceed $1,000 for any recovery for damage to property of any person other than the assured. . . . . "

Section 4 provides for the issuance of a permit "to engage in the transportation of persons and/or property." Section 5 requires a sworn, monthly statement showing "the gross earnings for all freight and passengers transported," and the payment of "a fee of five per cent of all such gross earnings" to be paid into the state highway fund, and "appropriated for the purpose of paying for the maintenance of state highways." Section 7 makes a violation of the act a misdemeanor.

The plaintiff pleads himself within the definition of "an auto transportation company," and alleges that he is now engaged in the operation of a motor vehicle of 11 pas-

sengers' capacity between the cities of Boise and Emmett; that he contemplates operating other vehicles equipped to carry more than 12 passengers; that there are many motor vehicles owned and operated by private individuals, some carrying more than 12 passengers and some less, operating over the public highways outside cities for the transportation of children to and from both private and public schools, for which compensation is paid either by parents or the school district; that there are also many privately owned motor vehicles rented for compensation without drivers, and driven by the renters over public highways; that many motor-trucks are operated over public highways for compensation pursuant to private contracts between the operators and owners of freight, and many such trucks operated over public highways for transportation and delivery of their own property for commercial purposes by stores, manufacturers, farmers, lumbermen, miners and others; that the surety companies of the state refuse to write bonds under the act, as the liability cannot be determined, and that the premium charged by insurance companies, which is set out in detail, is prohibitive; that if "gross earnings" mean the entire receipts without deduction for expenses, then five per cent of plaintiff's gross earnings is an amount in excess of his net earnings, and that such is the fact with respect to transportation companies in general throughout the state, and that the fee is therefore unreasonable, confiscatory and discriminatory, and will prohibit the transaction of business of an auto transportation company within the meaning of said law; that the amount of such fee is greatly in excess of the cost of regulation provided by said law, and in excess of the value of any right or privilege conferred thereby; and that the defendant has adopted a form for insurance and one for bonds, copies of which are attached to the complaint as exhibits.

There is no allegation as to any carrier being engaged in transportation both within and without incorporated cities.

Plaintiff contends that the act violates Idaho Const., art.

3, sec. 16, in that it embraces more than one subject, to wit, insurance and registration, raising of revenue and making an appropriation, and that the subject of the act is not expressed in the title; and that the insurance feature of the act is void because unintelligible. Plaintiff argues also that the act violates the fourteenth amendment to the federal constitution because it deprives him of property without due process of law, and the equal protection of the laws, and Idaho Const., art. 1, secs. 1 and 13, because it deprives him of the inalienable right of ''acquiring, possessing and protecting property,'' and deprives him of ''property without due process of law''; and that ''The whole law is discriminatory because: (a) It exempts private schools, (b) it exempts private carriers for compensation for public schools, (c) it exempts carriers who carry school children exclusively, but makes no exemption for school children carried in plaintiff's stages, (d) it exempts commercial carriage such as delivery vehicles for wholesale houses or logging trucks carrying their owner's property, (e) there is no tax on baggage, express or mail, (f) there is no insurance for cars of less than twelve passengers, (g) some cars have a $5,000 limit per passenger and others have none, (h) the total coverage for any number of passengers more than two and less than twelve is $10,000 in an eleven-passenger car and much more in a larger car, (i) there is no insurance for exactly twenty-passenger cars, (j) it places a compensation liability on those within it and the liability of all other carriers is simply that for negligence.''

Plaintiff further contends that the insurance provisions are unconstitutional because unreasonable in amount and on account of the limitation of sureties to surety companies; that the whole act is unreasonable in that it is not limited to carriage of freight or passengers as a business, nor operations of regular runs, nor even to operating for hire, but applies to all who carry any freight or any passenger for compensation; and that the five per cent tax is double taxation, in violation of Idaho Const., art. 7, sec. 5, in that he has already paid an automobile license fee for the same

purpose. A still further contention is made that the levy of a five per cent tax is in violation of acts of Congress forbidding collection of tolls on federal aid roads.

Counsel concede that under the police power, the state may "enforce a *proper* act" requiring registration and insurance, and may, under the taxing power, charge a proper tax for the use of the highways, arguing that "The objections are not to the justness or propriety of such legislation in principle, but to the wholly unreasonable and oppressive features of the particular Act, and the principal grounds on which relief is urged are that the Act is unconstitutional, and in any event is hopelessly unintelligible and meaningless."

[1] A doubt as to the constitutionality of an act should be resolved in its favor, and to declare it unconstitutional, it must clearly appear to be so. (*Ingard v. Barker,* 27 Ida. 124, 147 Pac. 293; 25 R. C. L., p. 1000, sec. 243.) It is the duty of the court to adopt such construction as will sustain the statute, if its language will permit. Where an act is fairly susceptible of two constructions, one of which will uphold its validity, while the other will render it unconstitutional, the former should be adopted. (25 R. C. L., p. 1000, sec. 243.)

[2] The act is not in contravention of Idaho Const., art. 3, sec. 16. It does not embrace more than one subject and matters properly connected therewith, and that subject is expressed in the title, "To Regulate Auto Transportation Companies." The requirements that such companies shall register with the department of law enforcement, and file liability and property damage insurance policies or surety bonds; that permits shall be issued to such companies; that they shall make a monthly report and pay a five per cent fee upon their gross earnings; and that such fees be paid into the highway fund; with the other incidental provisions for the enforcement of the act, and making a violation of it a misdemeanor, are all matters properly connected with the regulation of auto transportation companies. (Berry on Automobiles, 4th ed., p. 108, sec. 113;

*Boise City v. Baxter,* 41 Ida. 368, 238 Pac. 1029; *In re Kessler,* 26 Ida. 764, Ann. Cas. 1917A, 228, 146 Pac. 113, L. R. A. 1915D, 322; *Pioneer Irr. Dist. v. Bradley,* 8 Ida. 310, 101 Am. St. 201, 68 Pac. 295; *Jasnowski v. City of Detroit,* 191 Mich. 287, 157 N. W. 891.)

[3] Section 3 of the act provides that every "auto transportation company" shall, "before engaging in such business," procure liability and property damage insurance; and section 5 that such company shall file a monthly report, and pay a fee of five per cent of its gross earnings for freight and passengers transported. A reasonable construction of this act arrives at the ·legislative intent to regulate auto transportation companies which "engage in business" as such.

"Business" is defined (Webster's New International Dictionary, G. & C. Merriam Co., 1921) as "That which busies, or engages time, attention, or labor, as a principal serious concern or interest. Specif.: (a) Constant employment; regular occupation; work, as, the *business* of life; *business* before pleasure. (b) Any particular occupation or employment habitually engaged in, esp. for livelihood or gain."

See, also, 1 Words & Phrases, 915.

To "engage" is defined (Webster's New International Dictionary, G. & C. Merriam Co., 1921) as "To embark in a business; to take a part; to employ or involve one's self; to devote attention and effort; . . . . "

See, also, 2 Words & Phrases (2d Series), 273

"The definition of 'business' by the lexicographers is sufficiently broad and comprehensive to embrace every employment or occupation, and all matters that engage a person's attention or require his care, without the least regard to trade or business. The meaning of the legislators as expressed in the statutes is not as extensive. 'Business,' in a legislative sense, is that which occupies the time, attention, and labor of men for purposes of livelihood or for profit; a calling for the purpose of a livelihood. We will follow the latter meaning in interpreting the statutes re-

lating to license tax." (*State v. Boston Club,* 45 La. Ann. 585, 12 So. 895, 20 L. R. A. 185.)

"The terms business and employment as here used are synonymous, signifying that which occupies the time, attention and labor of men for the purpose of a livelihood or profit. Business, is here used in the sense of a calling for the purpose of a livelihood." (*Moore v. State,* 16 Ala. 411.)

[4] Plaintiff pleads on behalf of himself, without doubt engaged in the business, and of others similarly situated. Their concern for one who may carry an occasional person or item of freight as subject to the act is not well founded in the intent of the act. It can be no concern of theirs that another, by an apparent accidental or incidental carrying, may or may not subject himself to its requirements. It is the business that is being licensed, and is being regulated by the bond provisions. It is only on those "doing business" that the legislature has a right to impose a license tax. (*In re Gale,* 14 Ida. 761, 95 Pac. 679.)

[5] Plaintiff contends that the insurance feature of the act is void because unintelligible, and that it "cannot be corrected by the addition or omission of words." We are entitled to and must look to the intention of the legislature as gathered from the whole act, and when a literal reading of a provision will work an unreasonable or absurd result, if a reasonable intent of the legislature can be arrived at, the court should so construe the act as to arrive at such intention rather than an absurdity. To accomplish this purpose, words may be changed, not to legislate, but to arrive at what the legislature intended to enact. "Especially will this be done when it is necessary to prevent a law from becoming a nullity." (25 R. C. L., pp. 975, 976, sec. 225.)

[6] The title and body of chapter 197 include "all auto transportation companies." Section 3 requires "every auto transportation company, .... before engaging in such business," to procure insurance or bond. A literal reading of the act would exempt all vehicles equipped to transport less than 12 passengers, surely not within the intent or

purpose of the legislature, and would make a class by itself of vehicles equipped to carry exactly 20 passengers, because of the provision for a requirement of $15,000 on such vehicle equipped to carry "not less than twenty passengers" followed by an increased requirement as to vehicles equipped to carry "more than twenty passengers." Giving the whole act its reasonable construction, and changing the phrase "not less than twelve passengers" to read "not more than twelve passengers," and the phrase "not less than twenty passengers" to read "not more than twenty passengers," arrives at a graduated limit of insurance or bond to be carried on each class of vehicles, which is sensible and appears to have been the intention of the legislature.

[7–9] The act fixes a maximum of $5,000 for any recovery for personal injury suffered by one person, regardless of the carrying capacity of the vehicle. The insurance or bond feature for injury to persons is confined to injury suffered "while being transported in each such vehicle," while the bond for injury to property covers "any recovery for damage to property of any person other than the assured." Section 4 provides for the issuance of a permit to engage in the "transportation of persons and/or property." Thus, a carrier of freight to the exclusion of passengers may be issued a permit to engage in transportation of property only, and in such event would need but a bond of $1,000, conditioned for the payment of "any recovery for damage to property of any person other than the assured," while a "company" transporting passengers would have to give both. The requirement that the insurance or bond shall be written "providing for compensation" can have reference only to "any recovery for personal injury" or "for damage to property." This does not enlarge the liability of the "company" beyond that which it would be in any event, and contemplates only the recovery for injury or damage suffered for which the "company" would be liable in the absence of the act.

[10–13] We must presume that the legislature intended to enact those features of the act which it had the power

to enact. It must, therefore, be construed as a regulation of those classes or kinds of transportation on which the legislature had constitutional authority to impose such regulations. If the act can be reasonably so construed as to exclude an intention to accomplish that which the legislature had no power to accomplish, and let the act stand as a whole, this must be the intention presumed to have controlled the legislative body.

" . . . . The authorities, both elementary and judicial, recognize two kinds or classes of carriers, namely, private carriers and common carriers." (10 C. J., p. 37, sec. 1.)

" . . . . Considerations of public policy have led to the recognition by the courts, from an early period in the history of the common law, of rules respecting the duty of the common carrier as to serving the public, and as to liability for goods intrusted to its care which do not apply to private carriers of goods . . . . " (10 C. J., p. 38, sec. 2.)

"It is a question of law for the court to determine what constitutes a common carrier; but it is a question of fact whether one charged as a common carrier is within that definition and is carrying on its business in that capacity." (10 C. J., p. 40, sec. 9.)

The legislature cannot by legislative fiat convert property used exclusively in the business of a private carrier into a public utility, or make the owner a public carrier. (*Michigan Public Utilities Com. v. Duke,* 266 U. S. 570, 36 A. L. R. 1105, 45 Sup. Ct. 191, 69 L. ed. 445.) The bonding feature is entirely a police regulation. Imposing the obligation of furnishing an indemnity bond for damage to the property carried has, so far as a private carrier is concerned, no relation to public safety or order in the use of motor vehicles upon the highways, or to collection of compensation for the use of the highways. (*Michigan Public Utilities Com. v. Duke, supra.*) As the legislature has by this act made the giving of a bond necessary to the business regulated, we must presume that it was attempting to regulate only such business as to which it could so require a bond. As the legislature is regulating an automobile trans-

portation company which engages in business for compensation, and seeks to impose upon such transportation company a regulation requiring the giving of a bond conditioned for payment of any recovery by a passenger or a shipper of freight which regulation must find its authority in the police power and which as we have seen cannot be rightly imposed under the police power upon a private carrier, and, as a part of the same act and upon a theory of regulation of the same class and kind of carriers, imposes a license tax upon the business sought to be regulated, we must presume that it was attempting to impose such tax as a part of the regulation, and only upon the same class of carrier to which the bond provision could be made applicable. The act must, therefore, be construed as not applicable to private carriers, but as regulating those who are in their nature common carriers, those who hold themselves out to the public as ready and willing to carry passengers who present themselves, or freight presented. Thus, the act is not an imposition of a license tax upon one carrying property in the capacity of a private carrier, not holding himself out to the public as a common carrier.

[14] It would serve no useful purpose to discuss at length the power of the legislature to limit the carrier to furnishing bonds of surety or insurance companies only. Modern experience has brought into existence the surety and bonding companies for almost unlimited purposes. The results of loss to insured persons through other than surety bonds, and the power of the state to control, and the regulations adopted for the purpose of control of, bonding and insurance companies, with the resulting security to the insured, are persuasive reasons supporting the wisdom of the legislature, if it sees fit, to require that a bond be given by such insurance or bonding company. The power to require a bond necessarily implies the power to establish the qualifications of the bondsman. The requirement violates no constitutional right of plaintiff.

[15] We are content to rest our decision as to the propriety of requiring a bond upon the reasoning of such cases

as *West v. City of Asbury Park*, 89 N. J. L. 402, 99 Atl. 190, and *People v. Martin*, 203 App. Div. 423, 197 N. Y. Supp. 28, although those cases involved operations within corporate limits, and, as to the right to demand a surety or insurance company as surety, upon the reasoning of such as *Hadfield v. Lundin*, 98 Wash. 657, Ann. Cas. 1918C, 942, 168 Pac. 516, L. R. A. 1918B, 909; *State v. Seattle Taxicab & T. Co.*, 90 Wash. 416, 156 Pac. 837, and *Ex parte Cardinal*, 170 Cal. 519, 150 Pac. 348, L. R. A. 1915F, 850. The wisdom of requiring a bond from those who would engage in auto transportation is a matter in the discretion of the legislature, and, unless wholly unreasonable in amount, or confiscatory and prohibitive of a business which may not be prohibited, the amount is likewise discretionary.

[16] The cost of this bonding provision is not alone sufficient argument to invalidate the act, nor its cumulative effect, when one carrier may operate several vehicles. A limit of $5,000 liability upon a carrier for the injury of one person, and a $10,000 maximum liability as to a vehicle of not more than 12 passengers' capacity, cannot be said to be unreasonable when applied to one vehicle. The fact that a person operates more than one vehicle contributes only in increasing the personal security of that one individual in proportion to the volume of business in transportation.

[17] Plaintiff's contention that the five per cent tax is prohibitive of business is not sufficiently convincing to afford him relief. Plaintiff complains "that the amount of such fee is greatly in excess of the cost of regulation provided by said law, and in excess of the value of any right or privilege conferred thereby." The legislature has the right to impose a business tax for revenue above the cost of regulation. [18] If plaintiff means that the tax is in excess of the value of the use, or privilege of the use, of the public highways as a place to transact his business, he has pleaded no facts as to the amount or value of such use or privilege, and the allegation is a mere conclusion of law not admitted by the demurrer; and plaintiff cannot be permitted to impose his judgment against that of the legislature as to the value of the use or privilege of such use.

[19]   Auto transportation companies are not regulated in their charges by the Public Utilities Commission or any legislative enactment fixing such charges.   A charge of five per cent of the gross earnings does not appear so exorbitant or unreasonable as to make it unconstitutional.   There is nothing to prevent such carriers increasing their charges to an amount sufficient in addition to their present contemplated gross earnings to cover the amount of this tax.   The fact that an auto business will not pay for operation and protection of the passengers is no argument for its conduct without such protection; or, that a business will not pay a license tax which the legislature has the power to exact, and leave a margin of profit, is no just cause for foregoing the tax.   The levy of a license tax on the basis of a percentage of the gross earnings may be a fair method of arriving at the proportion of the maintenance of the public highways used which should be borne by the licensee.   (*Kane v. New Jersey,* 242 U. S. 160, 37 Sup. Ct. 30, 61 L. ed. 222.)

[20]   Another answer to the foregoing contentions is that the use of public highways may, so far as private use is concerned, be regulated, but their use for carrying on the business of a common carrier may be prohibited.   It cannot be doubted that the legislature may refuse to build a road, or, having built one, may refuse to appropriate for its maintenance.   Surely, it must, on the same principle, be conceded that, having built such a road, the legislature may prohibit its use for the conduct of business of a common carrier of passengers or freight.   Thus, a regulation may be so imposed upon business conducted by one as a common carrier as to amount to prohibition.   The wisdom of such legislation is with the legislature, and not with the court. Granted the power to prohibit the use of public highways for the purpose of one engaging in business thereon, the question of the reasonableness of restrictions placed upon the use is a matter for the legislature and not for the court. (*Hadfield v. Lundin, supra; Le Blanc v. City of New Orleans,* 138 La. 243, 70 So. 212.)

The fact that the requirements may prevent some from operating is not ground for declaring the act unconstitutional. Almost any regulation might do that. The mere fact that in some cases the act may work a hardship is not ground for declaring it unconstitutional, unless it is so unreasonable as to be confiscatory and oppressive in its general operation upon a business which may not be prohibited. (*Ohio Tax Cases*, 232 U. S. 576, 34 Sup. Ct. 372, 58 L. ed. 737.)

[21]  The classification of auto transportation companies so as to include those who use the public highways for the transportation of passengers or freight for hire as a business, is not unreasonable, and the fact that others may make use of the same highway for the transportation of their own goods in their own privately owned vehicles, without being subject to the act, does not render the classification arbitrary or unreasonable. (*Packard v. Banton*, 264 U. S. 140, 44 Sup. Ct. 257, 68 L. ed. 596.) If one class of use, by private carriers, can be regulated, and the other, by common carriers as a business, may be prohibited or regulated to the extent of practical prohibition, the latter cannot complain of such prohibition, as class legislation. The distinction between private use and public business use, and the right to regulate the one and prohibit the other, are sufficient on which to base the classification.

[22]  The exemption of vehicles used exclusively for transportation of school children is not unreasonable. Whether this transportation is paid for by the district or by the parents, the legislative intent to exempt such transportation from the bonding or fee provision of the act is justified by the consideration that, if included, this charge would ultimately increase the cost of education, a matter of public interest. The exemption is in accord with the spirit of other exemptions from taxes, granted to schools under the general laws. (C. S., sec. 3099, as amended, Sess. Laws 1921, c. 106, p. 246.) Whether it is the part of wisdom to exclude school children from the bonded protection, is a matter in the dis-

cretion of the legislature. But school authorities could, of their own volition, exact a bond from such carrier.

[23]  The exemption of "motor propelled cars or engines operated on the tracks of steam or electric railroads," or "companies operating exclusively within the corporate limits of incorporated cities" is not arbitrarily discriminative or unreasonable. (*West v. City of Asbury Park, supra.*)  The former are already under the jurisdiction of the Public Utilities Commission (C. S., c. 115; *Packard v. Banton, supra*) ; and the latter are left in the control of the cities. (*Savannah, T. & I. of H. Ry. v. Savannah*, 198 U. S. 392, 25 Sup. Ct. 690, 49 L. ed. 1097; *Ex parte Hoffert*, 34 S. D. 271, 148 N. W. 20, 52 L. R. A., N. S., 949.)  In any event, the classes are so inherently subject to distinction as to permit of the classification. (*State v. Horn*, 27 Ida. 782, 152 Pac. 275; *State v. Seattle Taxicab & T. Co., supra.*)

[24]  The carrying of baggage is ordinarily incidental to the carrying of passengers (10 C. J., p. 1196, sec. 1567), and [25] express companies are already subject to a business tax. (C. S., sec. 3355.)  [26]  The fact that such regulations might burden the carrying of United States mails, and the necessity of unhampered transportation thereof, are sufficient justification for the exemption of mail carried from the tax.

[27]  The five per cent tax levied by the act is not a "toll." Its levy is not in violation of "the acts of November 9, 1921 (1921 Sup. Fed. Stats. Ann. 95), and of July 11, 1916 (1918 Sup. Fed. Stats. Ann. 639), forbidding tolls on federal aid roads." It is a license tax laid not upon the vehicle, but upon the privilege of using the highways for business purposes. (*City of St. Louis v. Western Union T. Co.*, 148 U. S. 92, 13 Sup. Ct. 485, 37 L. ed. 380; *Cardwell v. American R. B. Co.*, 113 U. S. 205, 5 Sup. Ct. 423, 28 L. ed. 959.)  [28]  For the same reason that it is a license tax, it does not violate the provisions of Idaho Const., art. 7, sec. 5, which requires a uniformity, and prohibits duplication, of taxes. (Berry on Automobiles, 4th ed., secs. 110, 111, 112; *In re Kessler, supra; Jasnowski v. Dilworth, supra; Ex parte Hoffert, supra; Ohio Tax Cases, supra.*)

[29] Plaintiff complains that defendant requires an indorsement upon each insurance policy as set out at length, and that all bonds be in a form as set forth attached to the complaint. He nowhere pleads, except by inference, any illegality in those requirements, but does plead that he refuses "to file any statement, insurance policy or bond as specified in said Chapter 197, or as required by said defendant, or otherwise." A reasonable authority is vested in the defendant in "charge of the administration and enforcement of this act." He has no authority to extend the requirements of the act, or the liability of the plaintiff or others, or the terms of such a policy of insurance or bond, beyond the terms of the act. The requirements and liabilities are statutory, and cannot be extended beyond the statute. But we have not the case of one before us who offers to comply under any terms and we thus cannot pass upon the manner or form of his right to comply, or his compliance, until he does make such offer or attempt.

The judgment is affirmed. Costs to respondent.

William A. Lee, C. J., and Wm. E. Lee and Givens, JJ., concur.