(No. 6367. January 18, 1937.)

GEO. B. WALLACE, INC., a Corporation, WENTWORTH & IRWIN, INC., a Corporation, RAYMÉR MOTOR COMPANY, a Corporation, D. E. WALLACE, Doing Business Under the Trade Name and Style of WALLACE BROTHERS, COHEN–ANDERSON MOTOR CO., INC., a Corporation, LAMPING MOTORS, INC., a Corporation, LEWIS & CULBERSON, INC., a Corporation, TRANSPORT CORPORATION, a Corporation, W. R. PADDOCK, Doing Business Under the Trade Name and Style of PADDOCK MOTORS CO., ALLEN MOTOR COMPANY, a Corporation, LINEHAM MOTOR CORPORATION, a Corporation, CHARLES NELSON, Doing Business Under the Trade Name and Style of CHARLES NELSON COMPANY, J. T. DAVIS, Doing Business Under the Trade Name and Style of TWIN FALLS MOTOR COMPANY, MID–COLUMBIA GARAGE, INC., a Corporation, WILLIAM H. McLOUGHLIN, Doing Business Under the Trade Name and Style of McLOUGHLIN AUTO COMPANY, M. J. GOSS, FOSTER MOTOR CO., INC., a Corporation, BOISE

MOTOR CAR COMPANY, a Corporation, for and in Behalf of Themselves and All Others Similarly Situated, Respondents, v. EMMITT PFOST, as Commissioner of Law Enforcement of the State of Idaho, Appellant, and R. M. LOGSDON, Doing Business Under the Firm Name and Style of SUNSET MOTOR COMPANY, Intervenor and Respondent.

[65 Pac. (2d) 725.]

Bert H. Miller, Attorney General, Ariel L. Crowley, Assistant Attorney General, and Lawrence B. Quinn, Assistant Attorney General, for Appellant.

282

Dean Driscoll, for Respondents.

BUDGE, J.—The Second Extraordinary Session of the 1935 Legislature enacted a law now commonly known as the

"Caravan Act" (chap. 2, Second Extraordinary Session Laws of 1935), levying a fee of $5 per caravaned automobile transported from without the state, on its own wheels or in tow of another motor vehicle, for the purpose of selling or offering the same for sale. This appeal by the Commissioner of Law Enforcement is from a final judgment entered after a trial on the merits in the district court, enjoining the commissioner, as the officer charged with such duty, from enforcing as against respondents the "Caravan Act," on the ground that the same is unconstitutional under both state and federal Constitutions in several respects.

The action was originally instituted by four automobile dealers engaged in "caravaning" automobiles who brought the action "for and in behalf of themselves and all others similarly situated." Thereafter thirteen additional automobile firms or dealers intervened for like relief, and one additional automobile company thereafter joined as plaintiff in an amended complaint. Respondents are citizens and residents of either the state of Washington, Oregon or Idaho, all dealing in automobiles, with their respective places of business in one of said states. All drive or tow automobiles, new or used, singly or in groups, from eastern factories, or neighboring states in the case of used cars, to their respective places of business for the purpose of selling or offering the same for sale. A portion of respondents are resident automobile dealers and so licensed; others are nonresidents or foreign automobile companies engaged in "caravaning" automobiles from without the state and through the state. Respondents alleged in the lower court and here contend to like effect that:

"1. That the subject of the act was not specified in the proclamation convening the special session which enacted it, in violation of Section 9 of Article IV of the State Constitution, (a point not sustained below). ·

"2. That the subject of the act is not expressed in the title, in violation of Section 16 of Article III of the State Constitution, (likewise overruled below).

"3. That the act violates the commerce clause, Article 1, Sec. 8, of the United States Constitution.

"4. That it (a) deprives plaintiffs of their liberty and property without due process of law, and (b) denies them

the equal protection of the laws, in violation of the Fourteenth Amendment to the Constitution of the United States, and (c) the similar provisions of Section 13 of Article 1 of the State Constitution.

"5. That it abridges the privileges and immunities of citizens of the United States, in violation of the Fourteenth Amendment.

"6. That it deprives citizens of states other than Idaho of the privileges and immunities enjoyed by citizens of Idaho, in violation of Section 2 of Article IV of the United States Constitution.

"7. That it is a toll for the use of federal aid roads, as forbidden by the acts of Congress, (also overruled below)."

The lower court's findings and conclusions were in favor of respondents, except as indicated above, and judgment was entered enjoining the Commissioner of Law Enforcement from enforcing as against respondents the "Caravan Act." Appellant sets forth twenty-nine assignments of error, raising various questions. These assignments have been examined and we have concluded that the decisive questions involved are those hereinafter discussed and we think it unnecessary to discuss each assignment of error separately.

The record discloses there are at least two types or classes of respondents in this action with respect to their residence or place of doing business. On the one hand there are those respondents who are Idaho resident automobile dealers, regularly licensed as such, engaged in transporting automobiles from without the state, on their own wheels or in tow of another motor vehicle, for the purpose of selling or offering the same for sale, and who claim that the "Caravan Act" discriminates against them. On the other hand there are those respondents who are nonresidents or foreign companies or operators, not required to be licensed as dealers in Idaho, and who are engaged in transportation from without the state of motor vehicles, operating on their own wheels or in tow of another motor vehicle, for the purpose of selling or offering the same for sale, and which foreign or nonresident persons or corporations transport their cars through and out of the state. These claim discrimination against themselves by reason of the failure of the "Caravan Act" to include

within its terms commerce within the state and commerce originating in the state and moving out. These may best be considered separately and we shall first consider the claims of nonresident operators, who attack the validity of the statute, charging that it is repugnant to the commerce clause (art. 1, sec. 8), of the Fourteenth Amendment to the Constitution of the United States, section 13 of article 1 of the state Constitution, and section 2 of article 4 of the United States Constitution.

The "Caravan Act" (chap. 2, Extraordinary Session Laws of 1935) recites that:

"Section 1. The term 'caravaning' as used in this act shall mean the transportation from without the state of any motor vehicle operating on its own wheels or in tow of another motor vehicle for the purpose of selling or offering the same for sale to or by any agent, dealer, manufacturer's representative, purchaser, or prospective purchaser, *whether such agent, dealer, manufacturer's representative, purchaser, or prospective purchaser may be located within or without this state.*"

The statute then prohibits the use of the highways of the state for the "caravaning" of motor vehicles unless and until there shall have been secured from the Department of Law Enforcement of the State of Idaho a special permit as therein authorized. The pertinent part of the statute reads:

"Section 2. No person shall use any highway in this state for caravaning motor vehicles unless and until there shall first have been secured from the Department of Law Enforcement of the State of Idaho a special permit as to each vehicle so caravaned for use of the highways of this state in caravaning such vehicle, . . . . "

"Section 3. As a condition precedent to the issuance of any special permit provided for in Section Two of this Act, the Department of Law Enforcement of the State of Idaho shall charge and collect a fee of five dollars ($5.00) for each motor vehicle for which a caravaning permit may be issued, whether such vehicle be operated under its own power or in tow of another motor vehicle; . . . . "

Finances for the construction, maintenance and policing or regulation of traffic, in the state of Idaho are derived in

the main from various fees, licenses, taxes, and charges imposed upon motor vehicle operators, such as fees for the registration of motor vehicles owned or used in this state (I. C. A., secs. 48–127, 59–811), operator's licenses (chap. 88, 1935 Sess. Laws), taxes on the sale of motor fuel (chap. 46, 1933 Sess. Laws), automobile dealer's license (I. C. A., sec. 48–130, as amended chap. 30, and chap. 152, 1935 Sess. Laws), certificates of title (I. C. A., sec. 48–406), fines and penalties for violations of the motor vehicle laws, *ad valorem* taxes and other sources.

It may be conceded that respondents, nonresidents, pay certain taxes imposed alike on those engaged in using automobiles in the state of Idaho whether residents or nonresidents, such as the tax on motor fuel. However, prior to the enactment of the Caravan Act, foreign and nonresident corporations, or persons engaged in the transportation of motor vehicles on their own wheels or in tow of another motor vehicle from without the state, for the purpose of selling or offering the same for sale, were required to pay no registration, license, fee, or automobile dealer's license or fee, for the privilege of using the highways of the state, such as was imposed upon resident automobile dealers by I. C. A., section 48–130 as amended, chapter 30 and chapter 152, 1935 Session Laws, and I. C. A., section 48–406 (e). It is well settled that a state may impose a charge, registration or license fee, on those using motor vehicles in the state, although engaged in interstate commerce, as compensation for the use of the public highways, which is a fair contribution to the cost of constructing and maintaining them and regulating the traffic thereon. (*Piper v. Bingaman*, (D. C.) 12 Fed. Supp. 755; *Interstate Busses Corp. v. Blodgett*, 276 U. S. 245, 48 Sup. Ct. 230, 72 L. ed. 551; *Hendrick v. Maryland*, 235 U. S. 610, 35 Sup. Ct. 140, 59 L. ed. 385; *Kane v. New Jersey*, 242 U. S. 160, 37 Sup. Ct. 30, 61 L. ed. 222; *Interstate Transit v. Lindsey*, 283 U. S. 183, 51 Sup. Ct. 380, 75 L. ed. 953; *Aero Mayflower Transit Co. v. Georgia Public Service Com.*, 295 U. S. 285, 55 Sup. Ct. 709, 79 L. ed. 1439; *Morf v. Bingaman*, 298 U. S. 407, 56 Sup. Ct. 756, 80 L. ed. 1245; *Morf v. Ingels*, 14 Fed. Supp. 922, at p. 928 (dissenting opinion).

██ The statutes imposing a tax, fee or license upon resident automobile dealers and the Caravan Tax (chap. 2, Second Extraordinary Session Laws of 1935) imposing a tax, license or fee upon nonresident persons or corporations engaged in transportation of motor vehicles in interstate commerce on their own wheels or in tow of another motor vehicle, for the purpose of selling or offering the same for sale, are complementary in the sense that while both levy a tax, license or fee for the privilege of the use of the highways of the state with relation to the sale of motor vehicles, the receipts to be expended for highway maintenance, construction and policing, one affects only resident automobile dealers and the other affects nonresident dealers, corporations or persons who are not required to be licensed as a resident automobile dealer. Discrimination is not shown as between these by merely showing that the two statutes are different in form or adopt a different measure or method of assessment. The firmly established rule placed the burden upon the nonresident persons, corporations or dealers, engaged in ''caravaning'' automobiles to both plead and prove, not only that the tax is inapplicable to intrastate commerce, but that in actual practice the tax falls upon interstate commerce with an economic weight disproportionate to the burden of taxation imposed upon intrastate commerce. (*Interstate Busses Corp. v. Blodgett, supra; General American Tank Car Corp. v. Day,* 270 U. S. 367, 46 Sup. Ct. 234, 70 L. ed. 635; *Hendrick v. Maryland,* 235 U. S. 610, 35 Sup. Ct. 140, 59 L. ed. 385; *Interstate Busses Corp. v. Holyoke Street Ry. Co.,* 273 U. S. 45, 51, 47 Sup. Ct. 298, 71 L. ed. 530, 534.)

The complaint in this case contains no averment of disproportionate economic burden, and the findings of fact, if sufficient in form (which it is not necessary to decide) do not purport to find that a disproportionate economic burden exists; nor did the respondents make any effort, either by pleading or proof, to demonstrate the existence of such unequal economic burden. In disposing of a similar case upon the same ground, the Supreme Court of the United States said in *Interstate Busses Corp. v. Blodgett, supra:*

''To gain the relief for which it prays, appellant is under the necessity of showing that in actual practice the tax falls

with disproportionate economic weight on it . . . . The record does not show that it made any attempt to do so.''

Failing to bear the burden cast upon them in this relation, the judgment in favor of nonresident respondents is unsupported by the record, and must be reversed.

It appears that the same conclusion must be reached with reference to the transportation of motor vehicles from within the state on their own wheels or in tow of another motor vehicle for the purpose of selling or offering the same for sale. There is no showing that automobiles are manufactured in this state. There is evidence of isolated cases where new automobiles have been transported from within the state from resident dealers' places of business, for the purpose of resale and possible transportation of used automobiles from within the state for the purpose of resale. The evidence also discloses that ordinarily such used cars already bear state licenses, and it appears that in the case of the new automobiles a fee privileging their use of the highways of the state had already been exacted in the payment of resident dealer's license or caravan tax upon their coming into the state. A *quantum* of business, such as would defeat the classification as made by the legislature, does not appear to have been shown; and it further appears that respondents in this relation did not demonstrate actual discrimination or the existence of unequal economic burden. We are satisfied that the act is not repugnant to, or in conflict with, any of the various constitutional provisions urged by such respondents, and heretofore enumerated.

▮ Coming now to the question of the constitutionality of the act when applied to resident dealers actively engaged in caravaning, section 1 of the act provides:

''The term 'caravaning' as used in this act shall mean the transportation from without the state of any motor vehicle operating on its own wheels or in tow of another motor vehicle for the purpose of selling or offering the same for sale to or by any agent, dealer, manufacturer's representative, purchaser, or prospective purchaser, *whether such agent, dealer, manufacturer's representative, purchaser, or prospective purchaser may be located within or without this state. . . . . ''*

Construing the language as used in the italicized portion of section 1 of the act strictly in accordance with the language there used, it would seem that it was the intention of the legislature to impose the caravan tax upon both interstate automobile dealers, engaged in caravaning, and resident automobile dealers, engaged in the same traffic, or caravaning. The act provides, as will be observed, that it shall be effective "whether such agent, dealer, manufacturer's representative, purchaser, or prospective purchaser may be located *within or without this state.*" The act does not provide that it shall apply only to interstate automobile dealers caravaning cars from without this state. The act makes no distinction as between automobile dealers caravaning, whether they be located within or without this state. While it may be insisted that the tax cannot be constitutionally imposed, where the motor vehicles caravaned are brought into the state to be sold or offered for sale by resident dealers, for the reason that it would exact from such resident dealers, in addition to other taxes they are required to pay, the added burden of the caravan tax and thus placing a double burden of taxation upon such resident dealers transporting from without the state any motor vehicles in the manner specified in section 1 of the act. It cannot be gainsaid that the resident automobile dealer caravaning will be required to pay, not only other taxes exacted under various statutory provisions, but also the caravan tax. However, it does not necessarily follow that the act would be unconstitutional for this reason. Article 7, section 5, of the Constitution, does not prohibit dual taxation of property unless it relates to *ad valorem* taxes. (*State v. Doherty,* 3 Ida. (Hasb.) 384, 29 Pac. 855; *State v. Union Central Life Ins. Co.,* 8 Ida. 240, 67 Pac. 647; *State v. Jones,* 9 Ida. 693, 75 Pac. 819; *In re Gale,* 14 Ida. 761, 95 Pac. 679; *Northern Pac. Ry. Co. v. Gifford,* 25 Ida. 196, 136 Pac. 1131; *In re Kessler,* 26 Ida. 764, 146 Pac. 113, Ann. Cas. 1917A, 228, L. R. A. 1915D, 322; *Hartman v. Meier,* 39 Ida. 261, 227 Pac. 25; *Smallwood v. Jeter,* 42 Ida. 169, 244 Pac. 149; *Diefendorf v. Gallet,* 51 Ida. 619, 10 Pac. (2d) 307; *J. C. Penney Co. v. Diefendorf,* 54 Ida. 374, 32 Pac. (2d) 784; *Garrett Transfer etc. Co. v. Pfost,* 54 Ida. 576,

33 Pac. (2d) 743.)   The caravan tax does not exact an *ad valorem* tax, but an excise or license tax.

From the language used in section 1 of the caravan act, *supra*, it may be logically contended that the legislature, when enacting the caravan act, was of the opinion that the registration and licensing of local dealers related in no way to caravaning cars either into or across the state; and that in so far as the local dealer was concerned he was at that time on an equality with and in the same position as the nonresident dealer with respect to the caravaning of cars as defined in the act they were about to pass.   The act does not pretend to cover the movement of cars wholly within the state, but confines the meaning of the term to cars only from without the state.   This leaves local owners and dealers at liberty to operate, move and transport cars from place to place, wholly within the state, the same as before the passage of the act and without reference to compliance with the terms of the caravan act.   Now, conceding that the imposition of a license fee or tax, on all cars brought into the state by the means and for the purposes designated in the act (section 1), is not a discrimination against interstate commerce or in violation of the commerce clause of the Constitution (art. 1, sec. 8), and is valid under the holding in *Morf v. Bingaman,* 298 U. S. 407, 56 Sup. Ct. 756, 80 L. ed. 1245, it is not apparent how or why the exaction of a fee from a resident dealer engaged in ''caravaning,'' as defined in the act, is any discrimination against him and in favor of a nonresident dealer doing the same thing.   The fact that the local dealer has paid his registration fee and has acquired his allotted number of dealer's plates, which he may attach to cars he moves on the state highways, does not and should not protect him after he goes out into a foreign state and brings into this state a caravan of cars ''for the purpose of selling or offering the same for sale'' and by such means subjecting the state highways to an additional load or burden to which his local dealer's license could not subject them, except for someone caravaning these additional cars into the state.   The nonresident dealer who caravans cars into or through Idaho by only paying the caravan tax does not acquire like privileges enjoyed by the resident dealer under registration as a domestic or local dealer.   The requirement that the resident

dealer pay the same fee or license tax for caravaning as exacted from the nonresident is not an unreasonable or unfair discrimination against either for the reasons heretofore stated. (*Morf v. Bingaman, supra.*) Construing the language as used in subdivision 1 of the act, it would seem to warrant the conclusion that it has application to all persons, corporations, partnerships or what-not, either resident or foreign dealers who caravan cars from without the state into the state or through the state.

The caravan tax is imposed for the privilege accorded the caravaner to enter upon the highways of the state and for the privilege of the use of its roads and to compensate the state for the extra costs for the construction, maintenance and policing of the state highways, and is expended by the state for that purpose.

We take judicial notice of the fact that there are no manufacturing plants in this state for the building and construction of automobiles and transporting the same from within to without the state. It further appears from the record that caravaning from within to without the state by domestic automobile dealers is so negligible as to justify the conclusion that there is no discrimination in favor of domestic dealers engaged in the traffic of caravaning as would warrant the holding that the act is unconstitutional, for the reason that it discriminates between interstate automobile dealers and domestic dealers caravaning from without to within the state.

We are not unmindful of the rule, as heretofore announced by this court, that in construing a statute, attacked on the ground of its constitutionality, the court must adopt such a construction as will sustain its constitutionality if reasonably possible. (*Achenbach v. Kincaid,* 25 Ida. 768, 140 Pac. 529; *Smallwood v. Jeter,* 42 Ida. 169, 244 Pac. 149; *Williams v. Baldridge,* 48 Ida. 618, 284 Pac. 203; *J. C. Penney & Co. v. Diefendorf,* 54 Ida. 374, 32 Pac. (2d) 784.)

The judgment is reversed and the cause remanded with instructions to the trial court to enter findings, conclusions and judgment in accordance herewith.

Morgan, C. J., and Holden, Ailshie and Givens, JJ., concur.

Petition for rehearing denied.