(June 30, 1926.)

## THE COLUMBIA MOTORS COMPANY, a Corporation, Appellant, v. THE COUNTY OF ADA of the STATE OF IDAHO, Respondent.

### [247 Pac. 786.]

INTERSTATE COMMERCE—DUTY OF CARRIER WHERE CONSIGNEE REFUSES TO RECEIVE GOODS—CONTRACT OF TRANSPORTATION.

1.  Where shipment of automobiles in interstate commerce with title remaining in consignor was refused by consignee and placed in warehouse by carrier in its own name, interstate character of shipment ceased, justifying state tax thereon despite Const., U. S., art. 1, sec. 8.

2.  On failure or refusal of consignee to receive goods, carrier must store goods in own warehouses, or that of responsible third party, and hold them subject to order of consignor, whereupon its relation to goods becomes that of warehouseman.

3.  Contract of transportation is presumed made with knowledge of duty of common carrier to store goods in warehouses after refusal of delivery by consignee.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Raymond L. Givens, Judge.

Action to recover taxes paid on automobiles claimed to be exempt as a shipment of goods in interstate commerce. Judgment for Defendant. *Affirmed.*

J. R. Smead, for Appellant.

State legislation of any sort constituting a regulation of, or placing a burden on, interstate commerce, or executive

---

Publisher's Note.

1.  See 5 R. C. L. 708.

2.  See 4 R. C. L. 839.

See Carriers, 10 C. J., sec. 386, p. 269, n. 19; p. 270, n. 20, 21, 22, 23, 24.

Commerce, 12 C. J., sec. 129, p. 99, n. 25.

Evidence, 22 C. J., sec. 85, p. 148, n. 67.

acts thereunder operating to the same effect, are invalid because forbidden by the federal constitution. (Cooley, Taxation, p. 152; *Parks Bros. v. Nez Perce County*, 13 Ida. 298, 121 Am. St. 261, 12 Ann. Cas. 1113, 89 Pac. 949; *In re Kinyon*, 9 Ida. 642, 2 Ann. Cas. 699, 75 Pac. 268; *Gibbons v. Ogden*, 9 Wheat. (U. S.) 1, 6 L. ed. 23; *State Freight Tax*, 15 Wall. (U. S.) 232, 21 L. ed. 146; *Brown v. Maryland*, 12 Wheat. (U. S.) 419, 6 L. ed. 678; *The License Cases*, 5 How. (U. S.) 504, 599, 12 L. ed. 256, 299; *Leisy v. Hardin*, 135 U. S. 100, 10 Sup. Ct. 681, 34 L. ed. 128; *Bowman v. Chicago N. W. R. Co.*, 125 U. S. 465, 8 Sup. Ct. 689, 31 L. ed. 700.)

Where the transportation is by carrier, the goods become an interstate shipment when delivered to the carrier, and remain such until they have been transported and delivered at the other end of the journey. (*Coe v. Errol*, 116 U. S. 517, 6 Sup. Ct. 475, 29 L. ed. 715; Judson, Taxation, sec. 135; *Adams Exp. Co. v. Kentucky*, 214 U. S. 218, 29 Sup. Ct. 633, 53 L. ed. 972; *Rhodes v. Iowa*, 170 U. S. 412, 18 Sup. Ct. 664, 42 L. ed. 1088; *Louisville & N. R. Co. v. F. W. Cook Brg. Co.*, 223 U. S. 70, 32 Sup. Ct. 189, 56 L. ed. 355; *State v. Adams Exp. Co.*, 171 Ind. 138, 85 N. E. 337, 19 L. R. A., N. S., 93; *Ogilvie v. Crawford Co.*, 7 Fed. 745; 2 McCrary, 148; *State v. Carrigan*, 39 N. J. L. 35.)

Control of the property by the owner or someone other than the carrier, or the contrary, is the test by which to determine whether goods placed with a carrier for shipment still retain their interstate character and are so exempt from state taxation. (*American Steel & Wire Co. v. Speed*, 192 U. S. 500, 519, 521, 522, 24 Sup. Ct. 365, 48 L. ed. 538, 546, 547; *Wrought Iron Range Co. v. Rich*, 32 Ida. 453, 184 Pac. 627; *Bacon v. Illinois*, 227 U. S. 504, 33 Sup. Ct. 299, 57 L. ed. 615; *Susquehanna Coal Co. v. South Amboy*, 228 U. S. 665, 33 Sup. Ct. 712, 57 L. ed. 1015; *General Oil Co. v. Crain*, 209 U. S. 211, 28 Sup. Ct. 475, 52 L. ed. 754; *Texas Co. v. Brown*, 258 U. S. 466, 42 Sup. Ct. 375, 66 L. ed. 721.)

Delay not caused by the consignor does not change the character of the interstate shipment, nor does delay occurring incidentally to carrying out the consignment. (*Coe v. Errol, supra; Kelly v. Rhodes, supra; State v. Engle,* 34 N. J. L. 425; *State v. Carrigan, supra; Ogilvie v. Crawford, supra; State v. Cumberland & P. R. Co.,* 40 Md. 22.)

Laurel E. Elam and Carl A. Burke, for Respondent.

Property is only exempt from taxation while in actual transit and if delayed for other than natural causes or lack of transportation can be lawfully taxed by state authorities. (*Susquehanna Coal Co. v. South Amboy,* 228 U. S. 665, 33 Sup. Ct. 712, 57 L. ed. 1015; *Bacon v. Illinois,* 277 U. S. 504, 33 Sup. Ct. 299, 57 L. ed. 615; *General Oil Co. v. Crain,* 209 U. S. 211, 28 Sup. Ct. 475, 52 L. ed. 754; *Logan v. Brown,* 125 Tenn. 209, 141 S. W. 751; *State v. Maxwell Motor Sales Co.,* 142 Minn. 226, 171 N. W. 566; *McCutcheon v. Board of Equalization,* 87 N. J. L. 370, 94 Atl. 310; 5 R. C. L. 707.)

Storage of property by railroad company on account of consignee's refusal to accept delivery is not due to natural causes or lack of transportation. Such action amounts to a constructive delivery to the consignor and terminates the function of carrier. (4 R. C. L., p. 760, sec. 226, p. 761, sec. 228, p. 830, sec. 284, p. 763, sec. 229; *State v. Intoxicating Liquor,* 94 Me. 335, 47 Atl. 531; *In re Kinyon,* 9 Ida. 642, 75 Pac. 268, 2 Ann. Cas. 699; *Parks Bros. & Co. v. Nez Perce County,* 13 Ida. 298, 121 Am. St. 261, 12 Ann. Cas. 1113, 89 Pac. 949; *Wrought Iron Range Co. v. Rich,* 32 Ida. 453, 184 Pac. 627; Carriers, 10 C. J. 269.) .

TERRELL, District Judge.—This is an action to recover the sum of $1,087.45 with interest at the lawful rate from November 1, 1921, paid (under protest) as a tax on certain automobiles.

The case was submitted to the lower court upon a stipulation that the allegations of the amended complaint, other than

paragraph five thereof, were true and might be considered as the facts in the case. The lower court rendered and entered judgment in favor of the respondent. From this judgment appeal is taken.

Omitting certain formal allegations, the salient facts of the amended complaint are as follows: that plaintiff was at all times mentioned in the amended complaint a manufacturer of automobiles and dealt in the same at wholesale, but did not deal in automobiles at retail either at Boise, or at any other point in Idaho; that in the latter part of 1920 plaintiff caused to be shipped by common carrier certain automobiles from some point in the state of Michigan to an automobile dealer at Boise, who had ordered said automobiles and had agreed to accept delivery of same and pay a draft for the purchase price of said cars accompanying the bill of lading as a condition precedent to delivery; that upon the arrival of said cars at Boise, in the latter part of the year 1920, the said automobile dealer, the consignee of said cars, without giving notice to plaintiff, refused to pay said draft or freight charges thereon; that said automobile dealer continued to refuse to pay said purchase price of said automobiles and freight charges; that thereupon the Oregon Short Line Railroad Company caused the automobiles to be unloaded from the railroad cars and stored them in warehouses in Boise, in its own name, and took warehouse receipts therefor; that in the early part of the year 1921 while the cars were in said warehouses and while plaintiff was endeavoring to deliver them to consignee and procure payment of the purchase price and freight charges, without being able to do so, the assessor of Ada county assessed said automobiles for the purpose of taxation, and levied a tax against the same for the year 1921, in reliance upon the laws of the state of Idaho; that on or about November 1, 1921, after having petitioned the board of county commissioners of Ada county to cancel said taxes, and their refusal so to do, plaintiff paid said tax so levied, under protest that the tax was illegal; that thereafter plaintiff presented a claim to

the board of county commissioners of Ada county for the amount of the tax so paid, which claim was rejected; that said cars on or about May 1, 1922, were sold by plaintiff for shipment to Portland, Oregon, and that the purchaser thereof on his own account, without any suggestion from plaintiff, decided to put them on sale in Idaho, and did so.

Appellant makes nine assignments of error, all of which relate to one question of law, and may be reduced to the following: That the court erred in holding that the automobiles in question were not a shipment of goods in interstate commerce but were subject to be assessed and levied upon for taxes in the state of Idaho, and rendering and entering judgment in favor of respondent.

If, as contended by counsel for appellant, the automobiles in question were still in interstate commerce at the time of the assessment and levy complained of, manifestly the said tax so levied would be illegal as being in contravention of article 1 of section 8 of the constitution of the United States, commonly known as the "commerce clause," and the judicial construction placed thereon, to the effect that a state may not unduly burden or restrict interstate commerce, which obviously such a tax would do, and the judgment of the lower court, could not stand.

On the contrary, if the said automobiles were not in interstate commerce at the time of said assessment and levy, the facts in the record of this case, aided by other facts judicially noticed, such as the powers and duties of a duly qualified and acting county assessor under the laws of the state of Idaho, would amply support the judgment of the lower court.

[1] The sole question, therefore, presented by the record in this case is whether the automobiles in question in the warehouses in the city of Boise, under the circumstances hereinbefore set forth, were still a shipment of merchandise in interstate commerce when the assessor of Ada county assessed them for taxation and levied a tax thereon in the early part of 1921.

While counsel for appellant has discussed a number of points and authorities dealing with some one or another phase of interstate commerce not in point in this case, we assume that these were intended to lead up to and serve to make clearer his primary contention which, to quote his language, is as follows: ''Where the transportation is by carrier, the goods become an interstate shipment when delivered to the carrier and remain such until they have been transported and delivered at the other end of the journey.'' He further contends that, ''control of the property by the owner or some one other than the carrier, or the contrary, is the test by which to determine whether goods placed with a carrier for shipment still retain their interstate character, and are so exempt from state taxation.'' If delivery is necessary, as contended, control would necessarily pass at the time of delivery, having in mind the status of a shipment at the end of its journey, and, therefore, the second contention of counsel so far as the facts of this case are concerned would seem to be a corollary of the first, and we shall so treat it.

As we view it, the strongest case cited by counsel for appellant in support of his contention that a delivery is necessary to take a shipment of merchandise out of interstate commerce is that of *Rhodes v. Iowa,* 170 U. S. 412, 18 Sup. Ct. 664, 42 L. ed. 1088. The facts of this case were as follows: A wooden box of intoxicating liquor marked ''groceries'' was consigned to an individual at Brighton, Iowa, from Dallas, Illinois, on a through bill of lading over the lines of two connecting common carriers. On the arrival of said box at Brighton, Iowa, it was placed by the trainmen on the station platform and shortly thereafter by the station agent in the freight warehouse about six feet away, and about an hour thereafter the box was seized by a constable under a search-warrant. The station agent was charged under the Iowa statute with the unlawful transportation of intoxicating liquor, the alleged unlawful transportation consisting of the removal of the box in question from the station platform to the freight warehouse. The

station agent was convicted and the judgment was affirmed by the supreme court of Iowa and reversed by the United States supreme court. The supreme court of the United States said in this case:

"The sole question presented for consideration is whether the statute of the state of Iowa can be held to apply to the box in question whilst it was in transit from its point of shipment, Dallas, Illinois, to its delivery to the consignee at the point to which it was consigned. That is to say, whether the law of the state of Iowa can be made to apply to a shipment from the state of Illinois, before the arrival and delivery of the merchandise, without causing the Iowa law to be repugnant to the constitution of the United States."

The court further in stating its conclusion, said: "We think that interpreting the statute by the light of all its provisions, it was not intended to and did not cause the power of the state to attach to an interstate commerce shipment, whilst the merchandise was in transit under such shipment, and until its arrival at the point of destination and delivery there to the consignee, . . . ."

In what sense did the United States supreme court use the word "delivery" in the language last above quoted? We think, having in mind the facts of that case, that they had in mind actual delivery in the usual and ordinary course of a commercial transaction of the character there involved, and not nondelivery or any other state of facts equivalent to delivery; that they had in mind a contemplated actual delivery which was not consummated because of the unauthorized intervention of the authorities of the state of Iowa and but for which actual delivery presumably would have been made in the usual and ordinary way.

If, as we understand counsel for appellant's contention, nothing but delivery to the consignee will take a shipment of interstate commerce out of interstate commerce, it would necessarily follow that in the event of the refusal of consignee to accept delivery, as in this case, the shipment would retain its character as an interstate shipment in-

definitely, or until consignor saw fit to give some further or other order with reference thereto. Such a contention is not only not founded in reason, but conceivably such a rule might be made the instrumentality for evading taxes altogether, although there is no intimation that such was the case here.

The facts in the case of *Rhodes v. Iowa, supra,* are clearly distinguishable from the facts in this case, and we think the rule of law it announced and relied upon by counsel for appellant, is not applicable to the facts of this case.

[2] What, then, is the law applicable to the facts of this case? It may be clearly seen, we think, by noting the status of the parties involved in the transaction at the time of the assessment and levy of the tax in question. We may at once eliminate the consignee because of his refusal to accept delivery of said automobiles. The status of the consignor was that of bailor. The status of the common carrier is to be determined by what it did, and what under the law it was its duty to do when delivery was refused by the consignee. The rule of law in this case which establishes the status of the common carrier as that of a warehouseman is well stated in 10 C. J. 269, where many citations of authority may be found, in the following language:

"Where the consignee fails or refuses to receive the goods shipped, it is the duty of the carrier to store the goods either in its own warehouse or in that of some responsible third party, and to hold the goods subject to the order of the consignor for a reasonable time. It has no right to abandon the goods to destruction or unnecessarily to expose them to loss or damage, nor to convert the freight to its own use or to dispose of it contrary to law. But where the carrier has complied with its duty to warehouse the goods, its strict common-law liability as insurer is at an end, and thereafter its relation to the goods is only that of warehouseman, and it is bound to the exercise of ordinary care in preserving them."

[3]  Whatever contract the consignor made with reference to the transportation of the automobiles in question was made with the knowledge, either actual or presumed, of the law above quoted with reference to the duty of a common carrier in respect to a shipment of merchandise where delivery thereof had been refused. Furthermore, the consignor knew that delivery had been refused by the consignee because it was negotiating for delivery which never was made even up until on or about May 1, 1922, when the consignor resold said automobiles.

Contrasting the status of the parties to the shipment of automobiles in question at the time when it was initiated and while in transit with the time that they were assessed and the tax levied, we find at the former period of time three parties involved in the transaction, viz. the consignor, the common carrier or carriers, and the consignee; while at the latter period the consignee has been eliminated by his act of refusing to accept the shipment, the common carrier has been completely eliminated if the automobiles were stored in warehouses other than warehouses of the common carrier, and if in the warehouses of the common carrier the status has been transformed to that of a warehouseman,—it being immaterial here which contingency was true,—and the consignor, as such, still remains as a party in said transaction, but with much less protection in the event of the loss of or damage to said automobiles.

This status of the consignor and the warehouseman at the time of the assessment and levy complained of is wholly incompatible with the status of parties connected with an interstate commerce shipment. The status of consignor and warehouseman has not come about as an incident to or in furtherance of the interstate shipment of the automobiles in question, but has come about by operation of law after the refusal of the consignee to accept delivery and the resultant termination of the function of the common carrier as an agency in an interstate commerce shipment that

transports the merchandise and ordinarily delivers it to the consignee when delivery can be made.

While no case has been cited on either side of this case that is altogether in point with the facts here, the case of *State v. Creeden,* 78 Iowa, 556, 43 N. W. 673, 7 L. R. A. 295, cited by counsel for respondent, adopts a course of reasoning with which what we have heretofore said with reference to the law of this case, is in line.

In that case certain packages of liquor had been shipped to the city of Des Moines, Iowa, by common carrier and placed in the freight warehouse of the common carrier at the point of destination where they had remained from six to fifteen days. An information was filed against the defendant Creeden alleging that these liquors were owned by him and were kept in the said freight warehouse and intended for sale in violation of the laws of the state of Iowa. The defendant was convicted, which conviction was sustained by the supreme court of Iowa in the above mentioned decision, in which said decision the court said:

"A carrier is a servant of commerce, and is protected under constitutional provisions for the regulation of commerce in the discharge of all the duties of a carrier recognized by the law. Regulations of commerce reach him while he is in the discharge of duties pertaining to commerce . . . . If he ceased to be a carrier and becomes a warehouseman, he cannot be protected as a carrier.

" . . . . It is a familiar rule of the law that upon the arrival of freight at the place of destination, and its deposit in the carrier's warehouse, his responsibility as carrier ceased. He becomes, as to the freight and the consignor and consignee, a warehouseman. (Citing authorities.) The defendant did not, therefore, hold the liquor as a carrier, but as a warehouseman. As such he was the agent of Con Creeden, the bailor.

"But counsel for defendant say that the goods became impressed with the character of interstate commerce, and retained that character after they went into the custody of the warehouseman. In truth, commerce, so far as trans-

portation is concerned, ceased to have connection with the liquors when they ceased to be held by the carrier for transportation. After that they were held for storage. It surely will not be contended that the storage of goods was a continuation of the transportation. They were stored because the transportation had ceased.''

We, therefore, conclude that where a shipment of automobiles in interstate commerce, title to which remains in consignor, has arrived at its destination and consignee refuses to accept delivery of the same, and the common carrier in pursuance of its legal duty to protect consignor's property places them in warehouses because of such refusal of consignee, and the lack in such event of any further order or direction by the consignor, the character of said .automobiles as a shipment in interstate commerce ceases.

Having thus arrived at the conclusion just announced, it· necessarily follows, as hereinbefore stated, that the automobiles in question were subject to assessment and the levy of the tax in question.

The judgment of the lower court is affirmed with costs to the respondent.

William A. Lee, C. J., and Wm. E. Lee and Taylor, JJ., and Varian, Dist. Judge, concur.