(Nos. 6117, 6118.   August 9, 1934.)

FIRST SECURITY BANK OF BOISE, a Corporation, and FIRST NATIONAL BANK OF IDAHO, a National Banking Association, for and in Behalf of Themselves and All Other State Depositories Similarly Situated, Plaintiffs and Cross-Appellants, v. MYRTLE P. ENKING, as Treasurer of the State of Idaho, and BEN DIEFENDORF, as Commissioner of Finance of the State of Idaho, Defendants and Appellants, and FIRST NATIONAL BANK OF IDAHO, a National Banking Association, and FIRST SECURITY BANK OF BOISE, a Corporation, for and in Behalf of Themselves and All Other Public Depositories Similarly Situated, Plaintiffs and Cross-Appellants, v. ADA COUNTY and JANET A. KETCHEN, Treasurer of Said County, Defendants and Appellants.

[35 Pac. (2d) 266.]

Dean Driscoll, for Plaintiffs and Cross-Appellants.

Bert H. Miller, Attorney General, Ariel L. Crowley, Assistant Attorney General, and Homer E. Martin, Prosecuting Attorney of Ada County, for Defendants and Appellants.

SUTTON, D. J.—These two cases were consolidated for trial and for determination in this court. They were instituted for the purpose of obtaining a declaratory judgment under the provisions of chapter 70, Session Laws for 1933.

The question upon which the court is asked to pass in the one case is: What, if any, rate of interest must be paid by member banks of the Federal Reserve System in the state of Idaho, acting as depositories for the funds of the state of Idaho, upon said public deposits? In the other case the question is: What, if any, rate of interest must be paid by said banks, acting as depositories for the public funds of Ada county, on said funds?

A determination of these questions involves an examination and construction of the Public Depository Law of the state of Idaho, being secs. 55–101 to 55–143, I. C. A., and particularly sec. 55–132 as amended by chapter 90, Session Laws for 1933, also, an examination of what may be termed the State Depository Law, being secs. 65–2623 to 65–2647, I. C. A., and particularly sec. 65–2641 as amended by chapter 96, Session Laws for 1933.

By the provisions of sec. 55–132, I. C. A., prior to the 1933 amendment, it was provided in substance that every public depository should be required to pay interest on the funds of the several depositing units of the state at a rate to be fixed by the supervising board of each depositing unit, which rate should be uniform and not be less than two per cent per annum upon the average daily balance of said depositing unit in such public depository. And by sec. 65–2641 prior to amendment and sec. 65–2642, it was provided in substance that every state depository should pay interest to the state upon the state funds deposited therein, at a rate to be fixed by the Department of Finance, which rate should be not less than two per cent per annum upon the average daily balance with a four-day exemption each month upon active accounts.

By the provisions of chapters 90 and 96 of the Session Laws for 1933, it is provided in substance, that every public depository and every state depository shall pay interest on the public money deposited with it, the rate of said interest being uniform throughout the state, "and' for the period between January 1st and June 30th, inclusive, each year shall be the average of the interest rates on daily bank balances established and in effect in the clearing-houses at Salt Lake City, Utah, and Portland, Oregon, on the first day of January in such period; and for the period between July 1st and December 31st, inclusive, of each year, shall be at the average of the interest rate on daily bank balances established and in effect in the same clearing-houses on the first day of July in such period''; and further provides the commissioner of finance shall determine and announce such interest rate semiannually on or within ten days after the first day of January and the first day of July by an order entered of record' in his office "which determination shall be conclusive,'' and further provides for mailing copies to the state treasurer, the treasurer of each county and certain depositories.

Thus it will be seen an attempt is made by the 1933 amendments, to take from the supervising boards of the several depositing units in the state and from the Department of Finance the authority to fix and determine the rate of interest to be paid by public depositories under certain restrictions, and to give that authority without restriction to the clearing-houses in the cities of Salt Lake, Utah, and Portland, Oregon, it being evident the provisions of the 1933 acts requiring the commissioner of finance to determine the interest rate, vests that officer with no discretion but with the simple duty of computing the average interest rate established and in effect in such clearing-houses on a fixed date.

The facts disclosed by the record and found by the trial court, stated chronologically are, said chapters 90 and 96 were approved February 25 and 27, 1933, respectively and by virtue of the emergency clauses embodied therein went into effect on those dates. Thereafter the Congress of

the United States passed what is known as the "Banking Act of 1933," sometimes referred to as the Glass-Steagall Bill, the effective date of which was June 16, 1933; and by the provisions of sec. 11 (b) of said act it is provided in substance that no member bank of the Federal Reserve System shall directly or indirectly by any device whatsoever pay any interest on any deposit which is payable on demand, provided such prohibition shall not apply to any deposit of public funds where the payment of interest is required by state law. All members of the clearing-houses in question are members of the Federal Reserve System with a single exception. And since the effective date of said "Banking Act" no interest has been paid on "Daily Bank Balances" in either of said clearing-houses and there has been no interest rate on such balances established or in effect in either of said clearing-houses, except that there is established and in effect in the Salt Lake clearing-house an interest rate of .75% per annum to be paid by members on deposits of other banks requiring 31 days notice of withdrawal and in the Portland clearing-house an interest rate of .375% to be paid by its members on deposits of other banks requiring thirty-one days notice of withdrawal and an interest rate of .5% on such deposits requiring sixty days notice of withdrawal. On July 10, 1933, the commissioner of finance entered of record in his office and mailed, as required by the acts in question, an order to the effect that by reason of the provisions of the Glass-Steagall Bill the member banks of the Salt Lake City and Portland clearing-houses had discontinued the payment of interest on demand deposits and therefore no interest would be paid on public funds in Idaho for the period from July 1, 1933, to December 31, 1933. Thereafter, on September 22, 1933, the commissioner of finance entered of record in his office, and mailed as required by law, an order reciting in substance his former order of July 10, 1933, with the further statement that the Attorney General, upon request of the Governor, and the Department of Finance, had made a study of the Glass-Steagall Bill, chapters 90 and 96 of the 1933 Session Laws, and had advised the commissioner of finance that interest must be

paid on demand deposits of public funds; that in the absence of a rate fixed by the clearing-house associations as related in said chapters 90 and 96, the rate of interest was being determined by the interest paid by member banks of the clearing-house associations on demand deposits of public funds as fixed by the statutes of the states of Utah and Oregon; that the rate of Utah being 1% and the rate of Oregon being 2%, the average thereof being 1.5%, the rate of interest to be paid upon the demand deposits of public funds in the state of Idaho from July 1 to December 31, 1933, would be 1.5%. This latter order evidently caused the commencement of these actions; wherein the state and the treasurer thereof in the one case, and the county and the treasurer thereof in the other, contending for the rate of 1.5% as fixed by the second order of the commissioner of finance, and the banks contending that no interest was required for the reason set forth in the commissioner's order of July 10, 1933, and the trial court concluded the rate of interest required to be paid by every public depository in the state of Idaho is the average of the interest rates on daily bank balances established and in effect in the clearinghouses at Salt Lake City and Portland, and "in the absence of any interest rate fixed and established in such clearing houses on such bank balances payable on demand, the interest rate required by law to be so paid by public depositories on money so deposited with them under the Public Depository Law, is the average of interest rates established and in effect in the aforesaid clearing-houses on such bank balances, which are payable only after the expiration of a specified time subsequent to notice of their withdrawal,'' and determined that the average of such rates was .005416 and further concluded that both of the orders of the commissioner of finance were *ultra vires,* void and of no force and effect, entered judgment accordingly, from which both parties have appealed.

According to our view of the matter the solution of the problem is to be found in the determination of the meaning of the expression ''interest rates on daily bank

balances.'' The trial court by findings of fact number eight found,

"That the phrase 'interest rates on daily bank balances established and in effect in the clearing houses at Salt Lake City, Utah, and Portland, Oregon' used in Sec. 65–2641 I. C. A. as amended by Sec. 2 of Ch. 96 of the Laws of 1933, means and at all times herein mentioned did mean, according to the approved usage of the English language, a uniform rate of interest fixed and established by the rules and regulations of each clearing house to be paid by the members of that clearing house on the balance on deposit with them at the close of each day's business to the credit of any other bank or trust company, and such is and at all times herein mentioned has been the technical meaning of said phrase as used generally in the business of all banks and clearing houses throughout the United States.''

A corresponding finding was made with reference to sec. 55–132, I. C. A., as amended by sec. 3 of chap. 90 of the Laws of 1933. These findings are in the same language as the ninth paragraph of the complaints which were denied by the defendants. These findings are not assigned as error by either party. And while the record discloses that a number of witnesses were examined and some documentary evidence was introduced at the trial, no transcript of the evidence is found in the record on appeal. We must therefore assume the trial court determined the meaning of the words in question in accordance with the rule provided by sec. 70–113, I. C. A., and in the light of the evidence. The plaintiff having alleged the meaning to be as found and the defendants not having assigned the findings as error neither of the parties is in a position to complain of the definition given the words by the lower court.

■ ■ Having determined the meaning of the expression ''interest rates on daily bank balances'' we are confronted with the question, Are deposits, which are withdrawable only after the expiration of a specified number of days notice, within the definition, or is it limited to demand deposits only? As has already been pointed out the trial court concluded both types of deposits are included. The

reasoning by which this conclusion is reached can best be stated in the words of the learned trial judge. In his memorandum decision in case No. 6117, involving deposits of state funds, he says:

"The statute in question, namely, Sec. 65-2641, I. ·C. A., as amended, makes no distinction as to demand or time daily bank balances. The legislature intended that interest on public deposits should be paid; so if by reason of federal action over which the legislature had no control, interest on demand daily bank balances was eliminated, but interest was permitted on time daily bank balances, the statute in my opinion should be construed so as to cover interest on daily balances whether on demand or time deposits as should be paid by the clearing houses in question. The fact that in Idaho the state deposits must be demand deposits does not interfere with this interpretation, for the reason that the time deposits representing daily bank balances are considered only insofar as they furnish a basis for the determination of the rate of interest to be paid on the deposits of public funds in Idaho."

We think this reasoning of the trial court is sound, and that by no other construction of the statutes in question and the facts found can the legislative will and intent be given effect. And such will and intent must be given effect if possible without regard to the wisdom thereof.

The judgments appealed from are affirmed. No costs are awarded.

Givens, Morgan and Wernette, JJ., concur.