(No. 6667.   January 16, 1940.)

CENTURY DISTILLING COMPANY, a Corporation, Respondent, v. BYRON DEFENBACH, as Tax Commissioner of the State of Idaho, Appellant.

[99 Pac. (2d) 56.]

J. W. Taylor, Attorney General, R. W. Beckwith, E. G. Elliott, Lawrence B. Quinn and D. W. Thomas, Assistant Attorneys General, for Appellant.

Ralph R. Breshears and Dean Driscoll, for Respondent.

196

AILSHIE, C. J. (After making the statement).—Two principal questions are presented which are necessary to be decided in the determination of this case:

(1) Was the business done purely interstate or essential to or inseparable from interstate commerce?

(2) If the sales and commerce made were not made and done in interstate commerce, did respondent engage in "doing business" in this state?

For reasons which will hereafter appear, we waive any consideration of the question of the right of respondent to maintain this action and the service of process and other procedural questions.

Preliminary to a consideration of the two legal questions thus propounded, we are asked to dismiss the case for want of jurisdiction of the issues, because of appellant's contention, that he is sued as an officer of the state for action taken by him officially on behalf of the state; and that the state has not given its consent to be sued for a declaratory judgment.

It is generally held by the courts, both state and federal, that where the action taken or threatened by an officer, is alleged to be in violation of the complainant's rights, either because of a misconstruction or misapplication by the officer of a statute, or on account of the alleged unconstitutionality of the statute, the action is not in fact one against the state but is rather against the individual because of his lack of power and authority to do the thing complained of. (*State v. Superior Court,* 182 Wash. 277, 46 Pac. (2d) 1046, 1049; *State Highway Com. v. Younger,* 170 Okl. 614, 41 Pac. (2d) 686, 688; *Ex parte Young,* 209 U. S. 123, 28 Sup. Ct. 441, 52 L. ed. 714, 727, 729, 14 Ann. Cas. 764, 13 L. R. A., N. S., 932; *Smyth v. Ames,* 169 U. S. 466, 18 Sup. Ct. 418, 42 L. ed. 819, 839; *Reagan v. Farmers Loan & T, Co.,* 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. ed. 1014, 1021; *Western U. Tel. Co. v.*

*Andrews,* 216 U. S. 165, 30 Sup. Ct. 286, 54 L. ed. 430, 431; *Home Tel. etc. Co. v. City of Los Angeles,* 227 U. S. 278, 33 Sup. Ct. 312, 57 L. ed. 510, 515; *Looney v. Crane Co.,* 245 U. S. 178, 38 Sup. Ct. 85, 62 L. ed. 230, 236; *White Eagle Oil & Ref. Co. v. Gunderson,* 48 S. D. 608, 205 N. W. 614, 43 A. L. R. 397, 403, 408.)

The principle announced by the foregoing authorities has been recognized by the practice in the courts of this state, as disclosed by the following cases, wherein injunctive relief was sought against appointive state officers: *Geo. B. Wallace, Inc., v. Pfost,* 57 Ida. 279, 65 Pac. (2d) 725, 110 A. L. R. 613; *Johnson v. Diefendorf,* 56 Ida. 620, 57 Pac. (2d) 1068; *Garrett Trans. & Storage Co. v. Pfost,* 54 Ida. 576, 33 Pac. (2d) 743; *J. C. Penney v. Diefendorf Co.,* 54 Ida. 374, 32 Pac. (2d) 784; *Independent School Dist. v. Pfost,* 51 Ida. 240, 4 Pac. (2d) 893, 84 A. L. R. 820; *City of Burley v. Pfost,* 51 Ida. 255, 4 Pac. (2d) 898; *Smallwood v. Jeter,* 42 Ida. 169, 244 Pac. 149.

Furthermore, section 2 of the Declaratory Judgment Act (chap. 70 of the 1933 Sess. Laws) comprehends this kind of case, in providing that

"Any person interested under a . . . . written contract . . . . oral contract, or . . . . other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder." (*State ex rel. Miller v. State Board of Education,* 56 Ida. 210, 52 Pac. (2d) 141.)

We conclude that the suit is not one against the state.

We now turn our attention to an examination of the decisive legal questions involved in the case as above stated. The *business* we must consider concerns alcoholic liquors manufactured in the state of Illinois and thence shipped to Idaho and *at some time and place sold to the Idaho Commission.* The liquor left Illinois and arrived in Idaho in interstate transportation. It left Illinois the property of the shipper; it was consigned to the shipper *in Idaho.* When it arrived in Idaho it was delivered by the transportation company to an independent warehouseman as the consignor's

bailee, and was thereupon removed from the possession and control of the carrier; whereupon the interstate transaction was terminated and the goods came to rest in Idaho in the possession of the warehouseman, the Distilling Company's bailee. That the interstate character of the shipment and transaction was terminated on delivery to the Idaho warehouseman, seems clear. (*Columbia Motors Co. v. County of Ada*, 42 Ida. 678, 247 Pac. 786, 48 A. L. R. 950, 956; *Wrought Iron Range Co. v. Rich*, 32 Ida. 453, 184 Pac. 627; *Mandel Bros. v. Henry A. O'Neil, Inc.*, 69 Fed. (2d) 452, 456; *State ex rel. Hays v. Robertson*, 271 Mo. 475, 196 S. W. 1132, 1136.)

In *General Oil Co. v. Crain*, 209 U. S. 211, 28 Sup. Ct. 475, 52 L. ed. 754, 765, the United States Supreme Court said:

" 'The substance of these cases is that, while the property is at rest for an indefinite time, awaiting transportation, or awaiting a sale at its place of destination, or at an intermediate point, it is subject to taxation.' . . . . This certainly describes a business,—describes a purpose for which the oil is taken from transportation, brought to rest in the state, and for which the protection of the state is necessary,—a purpose outside of the mere transportation of the oil. The case, therefore, comes under the principle announced in *American Steel & Wire Co. v. Speed*, 192 U. S. 500, 48 L. ed. 538, 24 Sup. Ct. Rep. 365."

No one contends here that the state can either directly or indirectly hinder or place any local burden on interstate commerce. We considered that question more than a third of a century ago and held a statute invalid because it ran counter to the provisions of sec. 8, art. 1 of the federal Constitution. (*In re Kinyon*, 9 Ida. 642, 75 Pac. 268, 2 Ann. Cas. 699; *Belle City Mfg. Co. v. Frizzell*, 11 Ida. 1, 81 Pac. 58.)

It is necessary, however, that we pursue the inquiry to the extent of ascertaining *where* the sale of these liquors took place,—whether in Illinois or Idaho. That is necessary in order that we find *where* the *business* was done. The negotiation started in Illinois by the Distilling Company, mailing an application to the commission in Idaho, for permission to

ship certain described liquors into the state. This permission was granted and the liquors were shipped and stored in three warehouses located in three different cities in the state and designated by the commission.

The shipment thus made is entirely unlike an interstate C. O. D. shipment. Two essential elements in the comparison are wholly absent from this case, viz., (a) delivery by the carrier to the purchaser; and (b) payment by the purchaser to the carrier. Instead of these acts, which evidence an interstate transaction, the carrier delivers the goods to the shipper's bailee, and when a sale is eventually made on credit, the shipper bills the purchaser and collects, in the usual course of time purchases, in commercial transactions.

It was stipulated (statement, *supra*) that *title* to the liquors should *remain* in the Distilling Company until they are withdrawn and tested by the commission. The provisions of the contract, requiring the commission to make requisitions; and that requisitions be mailed by the warehouseman to the company in Illinois; and the subsequent making of vouchers on the state, mailing them back to Idaho for the issuance of state warrants, and subsequent payment of the warrants, were all matters of detail in bookkeeping and payment of current bills, since the sales when finally made were clearly credit transactions; as the liquors withdrawn by the commission from the warehouses might be entirely sold out at retail and consumed before these bookkeeping and mailing details could be completed and payment be made. The prices at which liquors are sold and billed to the commission are the current prices at the time when the liquors are removed from the warehouses in Idaho and delivered to the commission. Charges for storage are paid by the Distilling Company.

So it seems quite clear that the *sales* actually took place and title passed here in Idaho at the warehouses where the commission took possession of the liquors on withdrawal of the same from the warehouses. These were clearly not mail order sales. They were sales and deliveries of property which had already been shipped into the state and freed and severed

from interstate commerce and control. (*East Coast Oil Co. v. Commissioner of Internal Revenue*, 31 U. S. B. T. A. 558, 560, and cases cited; 1 Williston on Sales, 2d ed., sec. 270 and notes 75–77, p. 546.) These goods when stored in the warehouse become a part of the mass of the taxable property within the state. (*Wrought Iron Range Co. v. Rich*, 32 Ida. 453, 184 Pac. 627; see, also, *In re Kinyon*, 9 Ida. 642, 649, 75 Pac. 268, 2 Ann. Cas. 699; *Parks Bros. & Co. v. Nez Perce County*, 13 Ida. 298, 89 Pac. 949, 121 Am. St. 261, 12 Ann. Cas. 1113.)

Under the stipulation, *supra*, the commission was not bound or obligated to take or accept *any kind or quantity* of liquors; and the only reason why the Distilling Company could not sell and dispose of any or all of a shipment *to anyone else*, was due to the Idaho Liquor Control Laws (chap. 103, 1935 Sess. Laws), prohibiting anyone selling, handling, or disposing of liquors within the state, except the commission.

It is argued, however, that this latter fact establishes respondent's contention, that these transactions did not constitute "doing business" in this state. It is asserted that, since respondent could not possibly legally sell its goods to anyone in the state of Idaho but the commission, therefore, sales to the one customer only did not constitute "doing business." In advancing this argument, respondent fails to note the difference between making a single sale or an isolated transaction with one customer, and making several or many sales to a single customer. A foreign corporation might do an extensive and flourishing daily business, all with a single customer, in which case it would certainly be "doing business," within the meaning of the law. Nor does it seem to us that the fact, that the statute limits the field of possible customers or purchasers to a single one, renders the transaction had with that customer any less "doing business," than in the case where the corporation selects, of its own volition, a single customer to which it makes many sales.

"It is not the length of time that a foreign corporation is here, nor the volume of business done while here,—it is the

purpose for which it comes that determines whether compliance with the statute is necessary. (*Hoffstater v. Jewell,* 33 Ida. 439 (444), 196 Pac. 194.)'' (*Adjustment Bureau, etc., v. Conley,* 44 Ida. 148, 153, 255 Pac. 414.)

■ It has been suggested that the commission could only purchase outside the state. The suggestion is wholly erroneous; the statute is otherwise. Many sections of the statute are devoted to the subject of regulating manufacturers within the state and issuing permits to them, and authorizing them to sell ''alcoholic liquors and wines to the commission and to customers outside of the state.'' (Sec. 29 of the Liquor Control Act.) Paragraphs (a) and (i) of sec. 7 contemplate the control of local manufacturers of alcoholic liquors as do many other sections and provisions of the Act. Paragraph (1) of subsection 2, section 8 of the Act, authorizes the commission to prescribe the manner and method of delivery of liquor by distillers to purchasers. (See, also, sec. 19.) So there is no room for doubt that the Act authorizes the commission to purchase alcoholic liquors from distillers within the state and also from manufacturers beyond the state line; making the purchase either in the state where manufactured or after shipment to Idaho under permit.

■ We conclude, upon all the facts and the law of the case, that the Distilling Company has been engaged in the business of selling, disposing of, and delivering (by its bailee) alcoholic liquors to the commission, within the state of Idaho; and is liable, under the Property Relief Act (Title 61, chap. 24, I. C. A.), to make a return to the tax commissioner and pay such tax as may be legally assessed against it.

The judgment is reversed and the cause is remanded with directions to dismiss the action. Costs awarded to appellant.

Givens, Morgan and Holden, JJ., concur.

BUDGE, J., Dissenting.—After the tax commissioner of the state of Idaho made demand upon respondent, Century Distilling Company, an Illinois Corporation, to file a state Income

Tax Return for the years 1935 and 1936, respondent instituted this suit under the provisions of Chapter 70, 1933 Session Laws, the Declaratory Judgment Act, asking for a judgment declaring respondent's rights and liabilities under chapter 103, 1935 Session Laws, and amendatory acts, the Liquor Control Act, respondent praying for an injunction against the tax commissioner restraining him from proceeding under chapter 24, Title 61, I. C. A. Appellant moved to quash the service of summons on the ground the action was against the state which motion was denied and answer was then filed attacking jurisdiction on this same ground and further that respondent was a foreign corporation, never having complied with the statutes of the state of Idaho to do business in the state. From a judgment restraining and enjoining the tax commissioner from levying and collecting an income tax upon respondent this appeal was taken.

The detailed manner and method by which respondent and the Idaho Liquor Control Commission transacted their business and other pertinent facts are set forth in a stipulation of facts agreed upon by the parties hereto and are set forth in part in the appended note.[1]

The procedure followed in shipping and selling respondent's liquors to the commission and the manner in which payment is received, using forms furnished by the commission, is set forth in detail in the stipulated facts, which procedure may be summarized as follows: Respondent makes application by mail, deposited in the postoffice in Peoria, Illinois, to the commission for permission to list with the commission alcoholic liquors and distilled spirits for sale to the commission. Upon

NOTE 1.—(Portions of agreed statement of facts.) "That the plaintiff, Century Distilling Company, is now and was at all times mentioned in the amended complaint on file herein a corporation organized and existing under and by virtue of the law of the State of Illinois with its office and principal place of business at Peoria in the state of Illinois, and is now and at all times mentioned in said amended complaint has been a citizen and resident of the State of Illinois and does not now and has not at any time herein or in the amended complaint referred to maintained or operated an office or place of business

receipt of permission respondent executes in its office at Peoria and forwards by mail, Form ILCC P–17 "Vendors specifications" listing liquors respondent desires to sell. Thereafter respondent, upon Form ILCC P–1 Rev. 300, makes application to the commission for permission to ship liquors listed on Form P–17 into Idaho, "to one of the three warehouses designated by the Idaho Liquor Control Commission for the ex-

in the State of Idaho, and has not qualified as a foreign corporation to do business in said state.

"That the State of Idaho is engaged in the retail sale of alcoholic liquors and distilled spirits under and pursuant to the provisions of Chapter 103, Idaho Session Laws of 1935, known as the 'Idaho Liquor Control Act'; and that the plaintiff, Century Distilling Company, is now and for more than one year last past and during the years 1935, 1936, and 1937, has been engaged in the business of selling alcoholic liquors and distilled spirits to the Idaho Liquor Commission, which are shipped into the State of Idaho from points without the state, pursuant to the provisions of said Idaho Liquor Control Act and the rules and regulations promulgated by said Idaho Liquor Control Commission pursuant to the provisions of said Liquor Control Act.

"That the plaintiff does not sell alcoholic liquors and distilled spirits to any person, firm, or corporation in the State of Idaho other than the Idaho Liquor Control Commission, and the storage of alcoholic liquors and distilled spirits by the plaintiff in the State of Idaho is required by the Commission to be and is in warehouses selected and designated by the Commission and over which the plaintiff has no control or supervision. Charges for storage facilities are paid by the plaintiff.

"That all alcoholic liquors and distilled spirits shipped by the plaintiff into the State of Idaho are shipped by the plaintiff to warehouses selected and designated by the Idaho Liquor Control Commission for the sole and exclusive use of said Commission, and the procedure whereby the plaintiff stores such alcoholic liquors and distilled spirits in such warehouses in the State of Idaho is for the benefit and convenience of the Commission for the purpose of making available to the Commission at all times a sufficient quantity of plaintiff's merchandise and enabling the Commission to keep its stores and dispensaries in the State of Idaho supplied with merchandise without the necessity of investing large sums of money in liquor stocks prior to the time that the same are needed by stores and dispensaries for sale to the public. Such an arrangement likewise makes readily available a supply of plaintiff's merchandise for sale to the Idaho Liquor Control Commission."

clusive use of and sale to the Idaho Liquor Control Commission." Permission is granted by the execution by the commission of Form ILCC P–2, "Vendor's Permit to Ship Merchandise into the State of Idaho for the Exclusive Use of the Idaho Liquor Control Commission," delivered to respondent by U. S. Mail at Peoria, and such liquors are then shipped in accordance with the following "notice" contained in the permit:

"NOTICE: The above merchandise shall be consigned to the vendor in care of the Idaho Liquor Control Commission and is to remain the property of the Vendor until withdrawn by the Commission for sale in their stores and agencies."

When the commission desires to withdraw alcoholic liquors from any warehouse in the state in which liquor has been stored by direction of the commission, the commission executes a purchase order, ILCC P–4, "Liquor Purchase Order," addressed to respondent at its office in Peoria, which however is delivered to the warehouseman in charge of the warehouse and a copy is sent to respondent. The liquor listed is released to the commission, which, still retains the right to test and inspect such liquors and to reject any that do not meet with its requirements, the purchase order specifically providing that: "title to merchandise does not pass to the Idaho Liquor Control Commission until acceptance of delivery by the Commission."

Upon receipt of the "Purchase Order," at its office in Peoria, respondent makes out an Invoice and Bill of Lading, upon Form ILCC W–101, and mails the same to the Commission and the store manager or agent of the commission acknowledges by signature receipt of the liquors invoiced. The commission prepares a claim, Form ILCC No. 117, which when executed by respondent at its office in Peoria is transmitted to the commission and by it transmitted to the state treasurer and the claim is then paid out of the "Liquor Control Act Fund," the warrant being transmitted by mail to respondent at Peoria, respondent having no office, place of business, nor agent to receive payment within the state of Idaho.

As heretofore stated respondent sought a declaratory judgment interpreting the Property Relief Act of 1931 with reference to respondent's method and manner of transacting its business as heretofore set forth, the judgment entered restraining and enjoining the tax commissioner from levying and collecting an income tax upon respondent.

Appellant's specifications of error one and two raise the point that appellant cannot be sued under the Declaratory Judgment Act for the reason that he is an officer of the state, and that the action against him in his official capacity is an action against the state, not properly maintainable, absent statutory authority. Respondent's position is that the action being one to construe a statute alleged to be, as to respondent, unconstitutional, is not one against the state, and that proceedings under the Declaratory Judgment Act are proper in this type of case, it not being necessary to resort to administrative procedure prior to the institution of suit.

It is settled doctrine that a suit against individuals, for the purpose of preventing them, as officers of the state, from enforcing an alleged unconstitutional enactment, to the injury of the rights of the plaintiff, is not a suit against the state. (*Ex parte Young*, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. ed. 714, 14 Ann. Cas. 764, 13 L. R. A. (N. S.) 932; *Smyth v. Ames*, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. ed. 819; *Reagan v. Farmers' Loan & T. Co.*, 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. ed. 1014; *Western Union Tel. Co. v. Andrews*, 216 U. S. 165, 30 Sup. Ct. 286, 54 L. ed. 430; *Home Tel. & Tel. Co. v. Los Angeles*, 227 U. S. 278, 33 Sup. Ct. 312, 57 L. ed. 510; *Looney v. Crane Co.*, 245 U. S. 178, 38 Sup. Ct. 85, 62 L. ed. 230; *White Eagle Oil & Refining Co. v. Gunderson*, 48 S. D. 608, 205 N. W. 614, 43 A. L. R. 397, and cases cited in note, 43 A. L. R., p. 408; *State Highway Com. v. Younger*, 170 Okl. 614, 41 Pac. (2d) 686; *State ex rel. Robinson v. Superior Court for King Co.*, 182 Wash. 277, 46 Pac. (2d) 1046.) And see *First Security Bank v. Enking*, 54 Ida. 735, 35 Pac. (2d) 266, wherein a declaratory judgment was entered against public officers and sustained by this court, and,

*Garrett Transfer & Storage Co. v. Pfost,* 54 Ida. 576, 33 Pac. (2d) 743; *Johnson v. Diefendorf,* 56 Ida. 620, 57 Pac. (2d) 1068; *Geo. B. Wallace, Inc., v. Pfost,* 57 Ida. 279, 65 Pac. (2d) 725, 110 A. L. R. 613; *Independent School Dist. v. Pfost,* 51 Ida. 240, 4 Pac. (2d) 893, 84 A. L. R. 820; *City of Burley v. Pfost,* 51 Ida. 255, 4 Pac. (2d) 898; *Smallwood v. Jeter,* 42 Ida. 169, 244 Pac. 149; *J. C. Penney Co. ·v. Diefendorf,* 54 Ida. 374, 32 Pac. (2d) 784, where injunctive relief was sought against state officers to restrain enforcement of statutes alleged to be unconstitutional and void.

While the Income Tax Act has been held to be constitutional in certain situations (*Diefendorf v. Gallet,* 51 Ida. 619, 10 Pac. (2d) 307) such fact does not determine that all provisions are constitutional in all situations. The sections of the law involved, if applicable to respondent, may as to respondent, be unconstitutional and void. A statute may be invalid as applied to one state of facts and yet valid as applied to another. (*Dahnke-Walker Mill. Co. v. Bondurant,* 257 U. S. 282, 42 Sup. Ct. 106, 56 L. ed. 239; *Bell City Mfg. Co. v. Frizzell,* 11 Ida. 1, 81 Pac. 58.) That portion of the act sought to be enforced is alleged to be unconstitutional if applied to respondent. If it be so the use of the name of the state to enforce it is a proceeding without the authority of, and one which does not affect, the state in its sovereign or governmental capacity, but it is simply an illegal act upon the part of a state official, attempting, by the use of the name of the state, to enforce a legislative enactment which is void because unconstitutional. My conclusion is that this action is not one to be classed as an action against the state.

Appellant's remaining assignments of error raise the question of whether respondent is subject to the Income Tax Statutes and required to make a return of its net profits and pay the tax prescribed. Appellant's claim is that the transactions above detailed make respondent amenable to the Foreign Corporation Act as one "doing business" in the state of Idaho, while respondent's contention is that its business is entirely interstate, that it is not "doing business" within the state of Idaho and that a tax from its net income would be a burden on interstate commerce and in violation of the commerce clause of the federal Constitution. (Art. 1, sec. 8, Con-

stitution of the United States.) The two questions thus presented are:

1. Does the method and manner in which respondent sells its merchandise to the Idaho Liquor Control Commission constitute the doing of business in this state, as that term is used in the statute concerning foreign corporations? (Sec. 29-501, I. C. A.; sec. 10, art. 11, Const.) and:

2. If the same does not constitute the "doing of business" is respondent's net income subject to the income tax law of this state? (Title 61, I. C. A.)

A number of authorities cited by appellant in which courts have held that the parties were "doing business" in a state, or were engaged in intrastate commerce, by reason of the fact that goods were sold or parties engaged in business with various individuals after the goods came to rest within the limits of the state, are inapplicable to a state of facts such as is here presented.

There is no claim made herein that respondent was "doing business" with anyone other than the state of Idaho and the only business transacted with it was that necessary to transfer the merchandise of respondent to the Idaho Liquor Control Commission and receive compensation therefor. It may be conceded that respondent is "doing business" with the state of Idaho through the Liquor Control Commission, but it is not doing business within the state of Idaho. In fact the Liquor Control Act prohibits the importing of liquors from without the state into the state of Idaho by anyone other than the commission. The act absolutely prohibits anyone except the state from transporting intoxicating liquors into the state of Idaho. Therefore if the liquors are being transported into the state by respondent they are being so transported in violation of law. While respondent's product is stored in warehouses in Idaho, it is so stored at the request of the commission "in warehouses selected and designated by the Commission, and over which the (respondent) has no control or supervision." The warehouseman designated by the state or the commission is not the agent of respondent but is the agent of the state to receive and hold the liquor imported by order of the state Liquor Control Commission. While the

warehousemen are paid their charges by respondent, the state pays fifteen cents per case bailment charge to respondent. The warehousemen do not act for or on behalf of respondent but under direct and positive directions given by the Liquor Control Commission of the state. There is, and can be, but one purchaser of liquor from respondent, namely the Idaho Liquor Control Commission, that is the state of Idaho, as the law and the stipulation disclose. (Laws 1935, chap. 103, p. 222.) Respondent cannot store liquor in Idaho except when requested by the commission, and cannot withdraw the stored liquor except under order of the commission. While naked title to the merchandise remains in respondent, until the commission has withdrawn it from the warehouse, has tested it and accepted it, the contract of purchase is made at respondent's office at Peoria, Illinois, and payment is likewise made by warrant of the state sent to respondent's office. The only part respondent has in the transaction is performed by it outside of the state of Idaho. After respondent's merchandise reaches the state of Idaho respondent loses all control over it, except only, that it holds the naked legal title thereto subject to disposal as the commission, only, may determine. In effect the transaction is that of a sale made at the Illinois place of business of respondent; with the privilege of selection, acceptance or rejection entirely in the commission. No one else can buy, respondent may not sell to another. The commission may accept all or any part or reject all or any part and a return of the merchandise to respondent can only be had after consent by the commission to its withdrawal, in effect a rejection of the merchandise. The method and manner in which respondent is required to transact its sales of liquor to the Idaho Liquor Control Commission does not constitute doing business in this state, but is purely interstate commerce. The limited control or indicia of ownership respondent has over its merchandise after it reaches the state of Idaho or the designated warehouses does not amount to the "doing of business" within the state. (*Bluebell Importing Corp. v. George S. Myers et al.,* (No. 2836, Circuit Court of Appeal of Franklin County, Ohio, May 9, 1938), unreported; *Vermont Farm Machinery Co. v. Hall,* 80 Or. 308, 156 Pac. 1073; *Marshall Milling Co. v. Rosenbluth,* 231 Ill. App. 325;

*Thomas Mfg. Co. v. Thede,* 186 Ill. App. 248; *Rock Island Plow Co. v. Peterson,* 93 Minn. 356, 101 N. W. 616; *Caldwell v. North Carolina,* 187 U. S. 622, 23 Sup. Ct. 229, 47 L. ed. 336; *Heyman v. Hays,* 236 U. S. 178, 35 Sup. Ct. 403, 59 L. ed. 527; *Continental Assur. Co. v. Ihler,* 53 Ida. 612, 26 Pac. (2d) 792.) And see *Belle City Mfg. Co. v. Frizzell, supra:*

"A foreign corporation that manufactures farm machinery in another state and sells the same to citizens of this state upon orders to be approved by it, taken either by a local or transient agent, and if approved the machinery to be shipped into the state pursuant to such order, . . . . is simply interstate commerce . . . . and not the 'doing of business.'"

See, also, *Greek-American Sponge Co. v. Richardson Drug Co.,* 124 Wis. 469, 102 N. W. 888, 109 Am. St. 961.

While appellant contends that the state may tax net income of a foreign corporation within the state which is owned or operated by nonresidents; and, may tax net income of a foreign corporation doing business within its taxing jurisdiction, and may include therein a portion of such net income arising from interstate commerce properly apportionable to the state, appellant likewise apparently concedes that under the doctrine announced in *Diefendorf v. Gallet,* 51 Ida. 619, 10 Pac. (2d) 307; *Shaffer v. Carter,* 252 U. S. 37, 40 Sup. Ct. 221, 64 L. ed. 445; *United States Glue Co. v. Oak Creek,* 247 U. S. 321, 38 Sup. Ct. 499, 62 L. ed. 1135, Ann. Cas. 1918E, 748, and other cases, that if respondent is not "doing business" within the state of Idaho it is not amenable to tax on net income, stating in the brief of appellant:

"From the doctrine announced in the foregoing authorities it is our contention that this case does not center upon the question of whether the respondent is doing an interstate or intrastate commerce. The question to be determined by this court is whether or not under the facts of this case the respondent is engaged in carrying on and doing business within the state of Idaho. If our position is correct in this connection, then the court must determine what constitutes doing business within the state of Idaho which will subject the respondent to the payment of income taxes under our laws, and in this determination the question of whether the business is interstate or intrastate is beside the point."

It is settled that a state may not directly hinder interstate commerce either by taxation or otherwise and this court so held at an early date. (*Belle City Mfg. Co. v. Frizzell, supra.*) The distinction between taxation that amounts to interference with interstate commerce and taxation which merely affects such commerce indirectly, and upon which the question of apportionment of taxation depends, as applicable to respondent, is well pointed out in *United States Glue Co. v. Town of Oak Creek,* 161 Wis. 211, 153 N. W. 241, Ann. Cas. 1918A, 421, the opinion of the Wisconsin court in *United States Glue Co. v. Oak Creek, supra,* as follows:

" 'if an income be taxed the recipient thereof must have a domicile within the state, or the property or business out of which the income issues must be situated within the state so that the income may be said to have a situs there. . . . . The Income Tax Law does not seek to reach property or an interest in property as such, but to reach incomes having a situs in the state, or growing out of a privilege exercised, or occupation conducted within the state.' . . . . The plaintiff, as recipient of its corporate income, whatever its source, has a domicile in this state, and the principal part of its property and its business which is employed in the transaction out of which the income issues is located in this state. The fact that the business so conducted may involve transactions in interstate commerce cannot affect the situs of the income.''

The state under the law as it now exists, wisely or otherwise, has a monopoly on the sale of intoxicating liquors throughout the state. The primary purpose of the law was to minimize the use of liquor and control its sale and distribution. Section 1 of the Liquor Control Act provides:

"This Act . . . . shall be deemed an exercise of the police power of the state, for the protection of the welfare, health, peace, morals and safety of the people of the state, and all its provisions shall be liberally construed for the accomplishment of that purpose, and it is declared to be the public policy that the traffic in alcoholic liquors is so affected with a public interest that it should be regulated to the extent of prohibiting all traffic in them, except as hereinafter provided for in this

Act through the medium of an Idaho Liquor Control Commission by this Act created, . . . . '' (Emphasis inserted.)

It would appear that the legislature, with the above purposes in mind, made provision that only the commission could import liquor, and further with such provisions and purposes in mind the commission adopted rules and regulations such as have heretofore been set out with the view that no person or corporation could lawfully import liquor and therefore purchases by the commission should be made without the state of Idaho, the commission importing the liquors. Not only did the legislature by this statute provide that no one but the liquor commission could lawfully import alcoholic liquor into this state, but it prohibited anyone other than the liquor commission from engaging in the business of selling such liquor within this state. Nor can the liquor commission authorize anyone other than itself to engage in the business of selling alcoholic liquor within this state. To hold now that the rules and regulations the commission has promulgated and the method and manner in which it directs liquor to be handled in this state constitutes the doing of business in this state on the part of the manufacturer from whom it buys, is in direct contradiction of the intent, purpose, spirit and letter of the statute.

In my opinion respondent is not required to make a return and is not subject to the income tax statutes of this state and the judgment of the trial court should therefore be affirmed.

ON PETITION FOR REHEARING.

(February 21, 1940.)

AILSHIE, C. J.—We have duly considered respondent's petition for rehearing and find no reason for changing the views expressed in the opinion filed herein. Respondent's statement in Specification of Error No. XVI, appears to misapprehend our holding. It states:

''In holding that the method by which the respondent sold its liquors to the Idaho Liquor Control Commission and shipped the same into the State of Idaho to be stored by

the Liquor Commission in warehouses selected and designated by the commission pending withdrawal thereof by the commission, constituted sales and delivery by the respondent of property which had already been shipped into the State of Idaho, and freed and severed from interstate commerce and control.''

*We do not hold that any liquors were sold to the commission prior to the shipment of such liquors into the state of Idaho.* We rather hold the contrary, viz.: that *no sales* took place until after the Distilling Company, under permit from the commission, shipped its liquors into the state and stored them with the warehousemen designated by the commission. It was clearly *after* such *shipment* and *storage* that the *sales* took place. It is true sales were anticipated, else the shipments would not have been authorized or made; but no sales were made until after such shipment and storage; and the liquors were not stored by the commission but rather by the shipper in warehouses designated by the commission in three Idaho cities. Petition denied.

Givens, Morgan and Holden, JJ., concur.